CLOTH *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered December 19, 1910.

1. EMINENT DOMAIN—PUBLIC USE.—Under the power of eminent domain private property can be taken only for a public use, and can not be taken without the owner's consent for the private use of another person; and whether or not the property taken for a public use is a judicial question, which the owner has the right to have determined by the courts. (Page 88.)

2. SAME—WHAT IS PUBLIC USE.—In order to constitute a public use, it is necessary that the public shall be concerned in such use, and the purpose for which the property is to be used must in fact be a public one. (Page 89.)

3. SAME—PUBLIC USE.—If the use for which property is desired to be condemned is a public one, the fact that private ends of others will be

advanced by such public user will not defeat the right to condemn the property. (Page 89.)

4. SAME—PUBLIC USE.—The fact that citizens of a town or the town itself agreed to pay a portion of the compensation for land sought to be condemned by a railway company for its freight depot will not change the character of the use for which the property is desired. (Page 90.)

5. SAME—DISCRETION AS TO EXERCISE OF POWER.—To a proceeding by a railway company to condemn land for a freight depot it is no defense that the railway company owns other property in the town which has been used and is suitable for such purposes, as the courts will not control the railway company's discretion in the location of its depots. (Page 90.)

6. APPEAL AND ERROR—CONCLUSIVENESS.—A verdict of the jury in an action at law which is supported by substantial evidence will not be disturbed on appeal. (Page 91.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; affirmed.

*Manning & Emerson,* for appellant.

*Buzbee & Hicks,* for appellee.

FRAUENTHAL, J. The appellee is a railroad corporation, and for a number of years it has, under due and legal authority, owned and operated a line of railroad in this State and through the town of Brinkley. It instituted proceedings to condemn a lot belonging to appellant situated in said town for the purpose of constructing thereon a freight depot. In its petition it alleged that it maintained a station at said town, and that in the due and proper operation of its railroad and the prosecution of its business it was necessary to conduct a freight depot at that place, and it asked the court to ascertain the amount of compensation which it should pay to appellant for said lot. Having deposited the amount designated by the circuit judge as the value of the property, it took possession thereof for said purpose.

In her answer the appellant alleged that the property was of the value of $2,500, and that she was damaged in the additional sum of $1,000 by reason of the appropriation thereof by appellee. She asked for a judgment against appellee for $3,500 for the property and her damages. Also, in her answer she denied that it was necessary for appellee to construct a freight depot upon her lot, and she asked that the cause be transferred to the chancery court to determine whether or not

appellee had the right to condemn the same. To defeat the right to condemn the property, she alleged that prior to March 8, 1909, appellee owned a lot in the town of Brinkley upon which it had constructed a freight depot which was destroyed by a cyclone upon that day, and that it still owned this lot, which was suitable for the purpose of a freight depot; and that on this account it was not necessary to take her property for that purpose. It also alleged that appellee had entered into an agreement with citizens of Brinkley or the municipality itself by which it was provided that the appellee should change the location of its freight depot from the former site thereof to the lot of appellant, and that said citizens or said town would pay a certain part of the consideration for the taking of her property. The court refused to transfer the cause to the chancery court, but proceeded to impanel a jury to determine the damages which appellant was entitled to recover by reason of the condemnation of said property. During the progress of the trial appellant offered to prove the allegations of her answer by reason of which she denied the right of appellee to condemn her property. The court refused to permit the introduction of any testimony tending to prove these facts, but only admitted testimony showing the value of her property and the damage thereto. The jury returned a verdict in favor of appellant for $1,000; and from the judgment entered thereon she has appealed to this court.

By virtue of our Constitution the State's right of eminent domain is conceded, and the Legislature, as the representative of the State's sovereignty, or the agency to which the Legislature has granted the power, has the right to take any kind of property for public use. Const. art. 2, § § 22, 23. But private property can, under the power of eminent domain, be taken only for a public use. It cannot be taken without the owner's consent and appropriated solely to the private use of another person or a corporation; and whether or not the property is taken for a public use. It can not be taken without the owner's consent and to have determined by the courts. 2 Lewis on Eminent Domain (3 ed.), § 599; *Railway Co.* v. *Petty,* 57 Ark. 359; *Mountain Park Terminal Ry. Co.* v. *Field,* 76 Ark. 239; *Gilbert* v. *Shaver,* 91 Ark. 231; 15 Cyc. 632.

In order to constitute a public use, it is necessary that the public shall be concerned in such use thereof, and the purpose for which the property is to be used must be in fact a public one.   15 Cyc. 581; *Railway Co.* v. *Petty,* 57 Ark. 359.   A railroad corporation is recognized as a public agency, and by the Legislature it is authorized to exercise the power of eminent domain in aid of the purposes for which it is organized.   By statutory authority it is impowered to condemn private property for its right-of-way (Kirby's Digest, § 2947); and the right-of-way "includes all grounds necessary for sidetracks, turnouts, depots, workshops, water stations, and other necessary buildings." Kirby's Digest, § 2958.   These uses are for railroad purposes, and they are of a public character, and a railroad company has therefore the right to condemn land for all such purposes.   If the use for which the property is desired is in fact a public one, then the right to condemn the property follows.   The mere fact that private ends of others will be advanced by such public user will not defeat the right to condemn the property.   As is said in the case of *Railway Co.* v. *Petty,* 57 Ark. 359: "It is common for the interests of some individuals to be advanced, while that of others is prejudiced, by the location of railway stations and switches, when there is no motive on the part of the railway officials to discriminate between them."   But the character of the use is no less public, and that public character is not changed, although private purposes will be incidentally served by the location of the railroad and its stations and buildings.   And it is held in the case of *Railway Company* v. *Petty, supra,* that: "The courts do not assume to interfere with the right of the company to locate its line, stations or switches," if it does not place an unreasonable restraint on the public to use same, although such location may incidentally subserve the interests of private individuals.   And, as is said by the author of the article on Eminent Domain in 15 Cyc. 582: "A use is not rendered a private one by the mere fact that a part or even the whole of the cost of constructing the improvement is paid by individuals, although such individuals are the persons most benefited by the improvement."

In her answer the appellant admitted that the railroad company desired to condemn the property involved in this suit for

the purpose of locating its freight depot thereon, and therefore that it sought to condemn it for a public use. This stamped the character of the use to which the property would be put, and the public nature of that use would not be changed by reason of the fact that citizens of the town of Brinkley or the town itself agreed to pay a portion of the ascertained compensation for the property. It was. therefore subject to condemnation, although the town of Brinkley paid a portion of this cost.

But it is urged that no necessity is shown for taking appellant's property because appellee owned other property in Brinkley which had been used and was suitable for the location of a freight depot thereon. We do not think that this contention is tenable. It is conceded that the use of the property for freight depot purposes is a public one, and that the employment of it for that purpose is a necessary public use of it. It is only urged that the particular location of the freight depot upon appellant's property is not necessary because it could be located on other property. If the purpose for which the property is sought to be used is a public one, and such use is necessary in carrying on and in facilitating its business, then the railroad company has the right to determine what particular property it will take for such purpose. The necessity in such event of using the particular property is not affected or lessened by the fact that other property is available for such purpose. If the company has theretofore used property for such purpose, the changed condition of the town or of its business may require the change of the location of such use, and of this the company has the right to judge and determine. As is said in the case of *Railway Company* v. *Petty, supra:* "Having determined that the sidetracks are necessary for the conduct of the company's business, the location must be left to the company's discretion." Upon this phase of this question, it is said in 2 Lewis on Eminent Domain (3 ed.), § 604: "It may be objected that there is no necessity of condemning the particular property because some other location might be made or other property obtained by agreement. But this objection is unavailing. Except as specially restricted by the Legislature, those invested with the power of eminent domain for a public purpose can make their own location according to their own views of what is best or

expedient, and this discretion cannot be controlled by the courts. If the contention were well founded, the result would be that the plaintiff could not condemn any land, for every other landholder would likewise have the same right to object to his land being condemned." *Cane Belt Ry. Co. v. Hughes* (Tex.), 72 S. W. 1020.

In the case of *Chicago & E. I. Rd. Co. v. People*, 222 Ill. 396, it is held that a railroad company has in the first instance the discretionary power, exercised in good faith, to locate all its passenger and freight depots. It is further held in that case that the power of a railroad company to locate and establish its depot is not exhausted when it has been once exercised, but such power is a continuing one, which may be exercised in good faith by the company; and the mere fact that it has located a depot at a certain place and used the same for many years does not estop it from changing such location. See also *Chicago & Northwestern Ry. Co. v. Chicago Mechanics' Institute*, 239 Ill. 197; *Kansas & T. Coal Ry. v. Northwestern Coal & M. Co.*, 51 L. R. A. 936; *St. Louis, H. & K. C. R. Co. v. Hannibal Union Depot Co.*, 125 Mo. 93.

In her answer appellant does not allege, nor is it contended, that the entire lot is not necessary for the purposes of a freight depot. *St. Louis & S. F. Rd. Co. v. Tapp*, 64 Ark. 357. It is only alleged that it is not necessary to take her property because other property is available for this purpose. This allegation was not sufficient, we think, to deprive the appellant of the right to condemn this particular property which in its discretion the company in good faith determined was necessary in the proper conduct of its business.

The court did not err in refusing to transfer the cause to the equity court, nor did it err in refusing to admit the introduction of the testimony offered by appellant.

It is urged that the amount of damages that was awarded by the jury to appellant was inadequate, and was contrary, not only to the preponderance of the evidence, but to undisputed testimony, which showed the value of the property was larger than the amount of the verdict. A number of witnesses testified relative to the value of the property involved in this case. Some of the witnesses placed its value at $250. The appellant claimed

that it was of the value of $2,000; and there was testimony tending to prove that she had been offered from $1,250 to $1,500 therefor. But the great majority of the witnesses testified that the property was of the value of from $500 to $700. The value of the property and the damages which appellant sustained by reason of the condemnation thereof was a question of fact which it was the province of the jury to determine. If there is substantial evidence to sustain this finding of the jury, then, under the repeated rulings of this court, such finding should not be disturbed. The jury returned a verdict in favor of appellant for $1,000, and we think there was substantial evidence to sustain that finding. *St. Louis, I. M. & S. Ry. Co.* v. *Theo. Maxfield Co.,* 94 Ark. 135.

The judgment is accordingly affirmed.