STUTTGART & RICE BELT RAILROAD COMPANY *v.* KOCOUREK.

Opinion delivered November 20, 1911.

1. EMINENT DOMAIN—DAMAGES—RANGE OF INQUIRY.—In a proceeding by a railroad company to condemn property for its right of way, the landowner may prove any fact concerning the property which he would naturally be supposed to adduce if he were attempting to sell it to a private individual. (Page 49.)

2. SAME—ELEMENTS OF DAMAGE.—In a railway condemnation suit, the land owner may prove, not alone the market value of the land actually appropriated, but also the injury to the owner's remaining land, arising from the increased difficulty of communication between the parts of the severed tract, the inconvenient shape in which the remaining land

is left, the cost of new fences required by the construction of the railroad, the increased exposure to fire, and various other causes not of remote or speculative character.  (Page 50.)

Appeal from Prairie Circuit Court, Southern District; *Eugene Lankford*, Judge; affirmed.

### STATEMENT BY THE COURT.

The railroad company filed a petition in the Southern District of Prairie Circuit Court, to condemn a right of way through one hundred and sixty acres of land in Prairie County, the property of Frank and Anna Kocourek.  They answered that the land actually taken was seven acres, of the value of three hundred and fifty dollars, and that the building of the road damaged the market value of their land one thousand dollars; that it was good rice land, and that, because of the building of the road across it, it could not be used for cultivation of rice, without two pumping stations, which would cost twenty-five hundred dollars; that the crop on the right of way taken, when the road was built, was of the value of one hundred dollars and the shade trees thereon another hundred, and that they incurred fifteen dollars expense in keeping the cattle out of their field, while the railroad was being constructed.  Prayed judgment for four thousand and eighty dollars damages.

It was agreed that the right of way occupied and consumed seven acres of the tract of land.  The testimony tends to show that the entire tract of land was fenced with barbed wire fences, and had a good house, barn, milk house and cow shed upon it; that thirty acres in the northwest corner, upon which the improvements were located and defendants resided, were in cultivation; that the railroad runs diagonally across the west eighty acres, leaving forty acres of the land west of the railroad and one hundred and twenty acres east of it; and that the land east of the railroad was being used as a pasture and for cutting hay, no part of it being in cultivation; that only one crossing of the railroad track was made, and that on the north line of the tract of land and the right of way was fenced through it.

Many witnesses testified, variously estimating the damage on account of the taking of the said property from the value of the seven acres at thirty-five dollars per acre to two thousand dollars, as a general farming proposition, and on up to four

thousand dollars, the damage thereto being considered with reference to its adaptability for rice culture. Lands in the vicinity were shown to have sold for thirty-five dollars per acre, and some of the witnesses testified that the damages amounted to ten or fifteen dollars per acre for the entire tract. The court instructed the jury, and they returned a verdict, assessing the damages at fifteen hundred dollars, and from the judgment the railroad appealed.

*J. H. Harrod, J. G. & C. B. Thweatt* and *John L. Ingram,* for appellant.

This court will reverse where in the trial of a case incompetent evidence has been admitted which may have been an element on which the verdict was founded; and the court has further held that "no testimony but what is strictly competent should be allowed to become an element to ascertain unliquidated damages." 23 Ark. 730.

*Manning & Emerson,* for appellees.

The scope of the inquiry was not as broad as it might legitimately have been. Each witness, after he had qualified himself, was asked to state how much in his judgment the land is damaged by the location of the railroad running through there, considering the manner in which it cuts it in two, the number of acres taken for the right of way, the inconvenience occasioned by one passing from one field to another, estimating the difference in value before the railroad was built and the value after it was built. This has been approved by this court as proper inquiry. 44 Ark. 258-63 and cases cited.

"The landowner should be allowed to state, and have his witnesses state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual." 49 Ark. 381-91. See further as to the scope of inquiry and the elements of damages, 41 Ark. 431; 51 Ark. 324-27; 3 Thompson on Corp., (2d ed.) § 2755; 41 Ark. 202; 94 Ark. 135; 44 Ark. 103.

KIRBY J., (after stating the facts). The appellant contends that the scope of the inquiry as to the damages permitted by the court in the introduction of the testimony and its instructions to the jury was entirely too large, without definitely

pointing out wherein, and that the damages allowed are excessive.

In *Little Rock Junction Ry. Co.* v. *Woodruff*, 49 Ark. 381-91, the court said: "As a general guide to the range which the testimony should be allowed to assume, we think it is safe to say that the landowner should be allowed to state, and have his witnesses state, every fact concerning the property which he would naturally be supposed to adduce, in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual. * * * This is only another way of stating the rule as laid down as follows, in *Boom Co.* v. *Patterson, supra,* (98 U. S. 403): 'In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in the sale of property to private parties.' "

In *St. Louis, Ark. & Tex. Rd.* v. *Anderson*, 39 Ark. 167, the court said: "The elements which enter into such an estimate are not alone the market value of the land actually appropriated, but include also the injury to the owner's remaining land, arising rom the increased difficulty of communication between the parts of the severed tract, the inconvenient shape in which the remaining land is left, the cost of new fences required in consequence of the construction of the railroad, the increased exposure to fire, so far as it depreciates the value of the residue of the land, and various other causes, provided they are not of a remote or speculative character."

In *Little Rock & F. S. Ry.* v. *McGehee*, 41 Ark. 202, a condemnation suit for a piece of land on the river front, entirely unfit for cultivation and not susceptible of use for any probable purpose whatever, except a ferry landing, with no ferry established upon it, the court, quoting from *Boom Co.* v. *Patterson*, 98 U. S. 403, said:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded, as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference *to the uses to which it is plainly adapted*; that is to say, what it is worth from its availability for valuable uses? * * * As a general thing, we should say that the compensation to the owner is to be

estimated by reference to the *uses to which the property is suitable.*"

See also *Little Rock, M. R. & T. Ry.* v. *Allen,* 41 Ark. 431; *Railway* v. *Combs,* 51 Ark. 324; *Railway* v. *Hunt, Id.* 330; *St. Louis, I. M. & S. Ry. Co.* v. *Maxfield Co.,* 94 Ark. 135; *Texas & St. Louis Ry.* v. *Kirby,* 44 Ark. 103; *Kansas City So. Ry. Co.* v. *Boles,* 88 Ark. 533; *Combs* v. *Lake,* 91 Ark. 128.

From these authorities, it appears what range the inquiry as to the damages caused by the condemnation and taking of land for public purposes may properly take, both as to the elements of damage and the witnesses' opinions and estimates thereon, and we do not find that its scope was extended beyond the prescribed limits in this cause nor that any error was committed by the lower court on that account.

The amount of the verdict seems large, but it is far less than many of the witnesses testified the damage amounted to, and was a question for the jury, who could have found it more or less upon the conflicting testimony and there was sufficient evidence to sustain it.

Finding no error in the record, the judgment is affirmed.