FORT SMITH & VAN BUREN DISTRICT *v.* SCOTT.

Opinion delivered April 22, 1912.

1. EMINENT DOMAIN—PLEADING.—A proceeding under Acts 1909, p. 325, for the condemnation of land for a site for a free bridge to be constructed by the Fort Smith & Van Buren District does not require that an answer shall be filed by the land owner when the value of the land is the sole question at issue and no special damages are claimed. (Page 408.)

2. CONTINUANCE—DISCRETION OF COURT.—The granting of continuances is within the sound discretion of the trial court; and unless a clear abuse of discretion appears, no reversal will be ordered. (Page 408.)

3. SAME—SURPRISE.—As the market value for any purpose of land sought to be condemned for a bridge site may be proved without an answer being filed, it was not error to permit the defendant at the trial to file an amended answer alleging that the land was highly valuable for the purpose of a ferry and bridge site, and to refuse a continuance to the plaintiff on account of such answer being filed. (Page 409.)

4. EVIDENCE—OPINIONS OF EXPERTS—COMPETENCY—The question as to who are competent to give opinions upon the value of land is largely left to the discretion of the trial court. (Page 409.)

5. SAME—MARKET VALUE.—The question of market value of land is to be determined upon the testimony of those who have knowledge upon that subject or whose business or experience entitles their opinions to weight, whether experts or not. (Page 409.)

6. EMINENT DOMAIN—DAMAGES.—The compensation of the owner of land in eminent domain proceedings is to be estimated by reference to any uses for which the property is adapted, having regard to the existing business or wants of the community or such as may reasonably be expected in the immediate future. (Page 411.)

7. SAME—MEASURE OF DAMAGES.—The measure of a land owner's compensation is the market value of the land at the time of the taking for all purposes, including its availability for any use to which it is plainly adapted, as well as the most valuable purpose for which it can be used. (Page 412).

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; affirmed.

*Hill, Brizzolara & Fitzhugh,* for appellant.

1. It was error to try the cause on the substituted answer. The whole case turned on the value as a bridge site, a claim not made in the original answer. It was also an abuse of discretion to refuse a continuance. 77 Mo. 26; 71 Ark. 222.

2. The fundamental error was in admitting incompetent testimony of the bridge value. 49 Ark. 381; 97 *Id.*

241; 52 S. E. 725; 18 App. Div. (N. Y.) 194; 26 W. Va. 672; 98 U. S. 403; 159 Pa. St. 99; 54 Atl. Rep. 339.

3. The whole doctrine of opinion evidence is an exception to the rule that witnesses must state facts.

The opinion evidence here lacked the necessary showing to render it admissible; 159 Pa. St. 99; 54 Atl. 339; 95 Ark. 284; 67 *Id.* 371; 62 *Id.* 1; 91 Ark. 133; 1 Wigmore on Ev. § § 558, 653, 711, 713, 720; 115 Pa. St. 325; 8 Atl. 764; 54 *Id.* 339; 56 N. E. 610.

4. The ferry privilege was not an element of damages, as the privilege is revocable by the State. 78 Tenn. 731. 18 S. W. 626; 27 Am. Dec. 655; 68 Atl. 1093; 29 Conn. 210; 3 Ind. 21; 18 Fed. Cas. 1234; 49 Fed. Rep. 1234; 49 *Id.* 114; Randolph on Em. Domain, § § 136-139; 2 Lewis on Em. Dom. § 484-7.

5. The verdict is excessive.

*Mehaffy, Reid & Mehaffy* and *Carmichael, Brooks & Powers,* for appellees.

1. There was no error in trying the case on the substituted answer, nor in refusing a continuance. Kirby's Dig., § 6173; 85 Ark. 414; 38 *Id.* 402; 58 *Id.* 513; 70 *Id.* 364; 101 Ark. 513; 67 Ark. 48. Nor was any answer necessary. Lewis on Em. Dom. § 591; 45 Ark. 278; 51 *Id.* 332; 114 Am. St. 974; 41 Ark. 202; 97 *Id.* 234; 91 *Id.* 128; 49 Ark. 381; 17 Ga. 30; 134 Ia. 563; 111 N. W. 1027.

2. The testimony as to the bridge site was complete. 134 Ia. 563; 111 N. W. 1027.

3. Under the evidence and instructions the jury properly considered the element of the value as a ferry right, but not a single element of value as a ferry right entered into the verdict.

4. If there was error in the instructions, the error was against defendents.

5. The verdict is not excessive. The defendants were entitled to have the jury consider the land for its most valuable use, and ferry rights and toll value should have been considered. 134 Ia. 563; 97 Ark. 214; Lewis on Em. Dom. § § 707 and 722; 1 Barbour (N. Y.) 294; 15 Mont. 452; 48 Am. St. 692; 49 Ark. 382; 88 Am. Dec. 113, 121; 91

Ark. 128; 41 *Id.* 202; 98 U. S. 403; 51 Ark. 272; 51 *Id.* 504; 52 *Id.* 64; 91 Ark. 128; 148 U. S. 310; 45 Ark. 429; 77 *Id.* 387.

KIRBY, J.   This is a proceeding by appellant to condemn ten acres of land of appellees on the Sebastian County side of the Arkansas River, opposite Jefferson Street in the city of Van Buren, for a site for a free bridge authorized to be constructed by the Fort Smith & Van Buren District, by a special act of the Legislature of 1909.   (Acts 1909, p. 325.)

The answer set up that appellees owned and operated a ferry at the point, and that the right to continue its operation depended upon the ownership of the land on the banks of the river; that the land was more valuable by reason of the ferry right and privilege; "that the ferry rights in controversy are especially valuable by reason of the fact that the ferry is operated between two cities and commmunities containing large populations, and that the defendants verily believe that the value of the land is materially enhanced by its availability for ferry privileges and uses, which could not exist without the land; that by the taking of it at the approaches to the ferry the ferry rights and privileges will be totally destroyed, thereby damaging the defendants in the sum of $100,000; that the land itself for agricultural and other purposes is worth at least $2,500 per acre, but that, viewed, valued and estimated with reference to the ferry rights and privileges, it would amount to $10,000 per acre; and prayed judgment for $100,000.

The venue was changed to Scott County, and, on the calling of the case for trial there and the plaintiff's announcement of ready, the defendants, over its objection, filed a substituted answer, alleging that said land was highly valuable because of its peculiar position and location for the purpose of a ferry site; that it is particularly valuable because of its proximity to the city of Van Buren and the main travelled highway leading from the city of Van Buren to the city of Fort Smith; and that it is particularly valuable because of its adaptability and feasibility for the site of the bridge erected by the plaintiffs upon the same; that it is particularly valuable on account of its general location and surroundings. Defendant alleges its fair cash market value to be one hundred thousand dollars, for which sum judgment was prayed.

Appellees owned all the river bank on that side of the river upon which the bridge could be located, and the only issue in the court below was as to the value of the property taken. The estimates of the witnesses ranged all the way from $750 to $100,000. The verdict of the jury fixed the damages at $10,000, and from the judgment thereon appellant appealed.

It is contended that the court erred in permitting the substituted answer to be filed, which it is claimed changed the issue, and in refusing to grant a continuance on account thereof, in admitting incompetent testimony, and in giving and refusing certain instructions, and also that the verdict is excessive.

1. By the terms of the act, lands necessary for the improvement were authorized to be condemned in the same manner as lands for railroad purposes and right-of-way are condemned by railroad companies. Such proceeding is for the purpose of assessing the damages for an injury the petition itself alleges, and ascertaining the amount of compensation which the company shall pay for the lands condemned, and the statute does not appear to contemplate that an answer shall be filed by the land owner, when that is the sole question for determination, and certainly none need be filed unless special damages which were not contemplated on the filing of the petition are claimed. Kirby's Digest, § § 2947, 2951-2952; *Bentonville Railroad* v. *Stroud,* 45 Ark. 278; *Railway* v. *Hunt,* 51 Ark. 332; *Smith* v. *Chicago & W. I. Rd. Co.,* 105 Ill. 511; *Republican Valley Rd. Co.,* v. *Hays,* 13 Neb. 489.

Appellant's contention that error was committed in premitting the filing of the substituted answer on the calling of the case for trial, which alleged that the lands sought to be taken were particularly valuable for bridge site purposes, and that a new issue was thereby introduced, and that it was surprised, and, on that account, entitled to a continuance, is not well founded.

The granting of continuances, as has been uniformly held, is within the sound discretion of the trial court; and, unless such discretion appears clearly to have been abused, it is

not the practice to set aside a judgment for a denial thereof. *Taylor* v. *Gumpert,* 96 Ark. 354.

The petition for condemnation alleged, as the law requires it should, that the land was needed as a site for the west approach to the free bridge, to be constructed in accordance with the act of the Legislature providing for the construction thereof, and prayed for damages to be assessed for the land taken, thus tendering the issue of the amount of the compensation which it should be required to pay the owner therefor.

Although an answer had been filed, setting out that the land was particularly valuable for the operation of a ferry and as a site therefor, it could not have limited the damages for the injury which the owner was entitled to as compensation for the land—the issue   tendered by the petition—to that alone, it evidently being intended more in the nature of an allegation of special damages only, and certainly appellant could not have been surprised by the allegations of the substituted answer that it was particularly valuable as a bridge site, since that was the purpose for which it was sought to be condemned, and all value that attached to the land in that connection, its market value for all purposes, was necessarily contemplated on the filing of the petition.

The market value of the land for any and all purposes could have been proved without the substituted answer, the issue being raised or tendered by the filing of the petition to condemn and assess the damages, and the court committed no error in allowing it to be filed and refusing to grant a continuance on account thereof.

2.   It is next contended that certain witnesses were not qualified to express opinions upon the value of the land taken, and that their testimony was incompetent. The question as to who are competent to give such opinions is one which must be left largely to the discretion of the trial court. *St. Louis, A. & T. Rd.* v. *Anderson,* 39 Ark. 172; *Texas & St. L. Ry.* v. *Kirby,* 44 Ark. 103; *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381; Lewis on Eminent Domain, § 656.

The question of market value is to be determined upon the testimony of those who have knowledge upon that subject or whose business or experience entitles their opinions

to weight, and is usually established by the opinions of witnesses who are familiar with the property taken, this being one of the recognized exceptions to the general rule that witnesses are required to state facts and not express opinions. Cooley, Const. Lim. 565; *Little Rock Junction Ry.* v. *Woodruff, supra.*

In *Boom Co.* v. *Patterson,* 98 U. S. 408, the court said: "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in the sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted, that is to say, what is it worth from its availability for valuable uses. * * * So many and varied are the circumstances to be taken into account in determining the value of the property condemned for public purposes that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. * * * But as a general thing we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." And "any existing facts which enter into the value of the land in public and general estimation, and tending to influence the minds of sellers and buyers, may be considered." *Russell* v. *St. Paul, M. & M. Ry. Co.,* 33 Minn. 210, 22 N. W. 379.

"Intelligent men, who have resided a long time in the place and who are acquainted with the land in question and say they know its value are competent, although they are merchants or farmers, and have never bought and sold land in the place." Lewis on Eminent Domain, § 656, n. 73.

It is thus seen that expert witnesses, in the sense in which the term is usually employed, are not required to prove the value in cases of this kind; and as our court has said: "One of the conditions upon which the opinion of nonexpert witnesses is received is 'that the facts upon which the witness is called upon to express his opinion is one such as men in

general are capable of comprehending and understanding.' "
*Combs* v. *Lake,* 91 Ark. 128.

If this were not so in cases like this involving an inquiry into the market value of property not commonly bought and sold for the purpose for which the land was taken, and the owner were confined upon such inquiry to witnesses who showed themselves qualified to testify to its value by their knowledge of sales of similar property for like purposes, it would, in effect, deny him the right to prove the true market value of his property.

The sole question here was the market value of the land, and the witnesses gave their opinions as to that value, basing them on different facts and reasons in support thereof. It is true, some of them had no knowledge of the sale of lands under like conditions for bridge site purposes, nor information as to the prices realized at such sales, nor were they expert engineers, but all who testified were intelligent men, long familiar with the lands taken and the locality and neighborhood where they were situated, knew their value for some purpose, and in giving their opinion as to the most valuable purpose for which they were adapted and could be used they stated their reasons for so doing. Their knowledge of the facts upon which their opinions were based and the reasons therefor and the value and weight thereof could have been and were "readily and satisfactorily tested by cross examination," as said in *St. Louis, A. & T. Rd.* v. *Kirby,* 44 Ark. 106.

The jury were capable of determining, and it was within their province to determine, the weight that should be accorded to the opinions of the witnesses, and we do not think there was any abuse of the discretion of the trial court in permitting the estimates of the witnesses and the reasons therefor to be submitted to the jury, or that any prejudicial error was committed in the introduction of the testimony.

3.  As to the instructions given, it will suffice to say that they were more favorable to appellant than it was entitled to.  We do not understand the law to be, as contended by appellant, that, because the ten acres of land taken had no peculiar natural advantage over the next or any other ten acres north of it, along the bank of the river for half a mile,

for a bridge site, therefore the land selected had no value for that purpose. It was in the line of travel, upon the usual travelled way between a thriving city, Van Buren, on the east side of the Arkansas River, and a large and important city a few miles to the west, Fort Smith, with an interurban car line that would cross the bridge, projected between the two cities, and already constructed and in operation down to the ferry upon the Fort Smith side of the river, and an act of the Legislature providing for the construction of a free bridge within the limits of the city of Van Buren that must have a site for the west approach thereof upon the further bank opposite to said city; and we can not see why these facts could not all be taken into account in estimating the value of the land condemned for a bridge site, nor why would they not have been such things as the owner of the land desiring to sell it would naturally call to the attention of one proposing to buy. Certainly, no man with capacity to own lands under similar conditions would overlook such facts as were shown to exist here, "the existing business and wants of the community" and such as could be reasonably expected in the immediate future, in attempting to make a sale thereof to one proposing to purchase, as an inducement thereto and in substantiation of the value thereof in fixing a price therefor. And this court has often held that, in determining the value of land condemned for public purposes, the same considerations are to be regarded as in the sale of property between private parties, and the convenience and availability of this property for use as a landing for the bridge was a material consideration in fixing its value.

The measure of the owner's compensation for the land condemned is the market value thereof at the time of the taking for all purposes, comprehending its availability for any use to which it is plainly adapted, as well as the most valuable purpose for which it can be used and will bring most in the market. *Boom Co.* v. *Patterson, supra; St. Louis, A. & T. Rd.* v. *Woodruff, supra; Gurdon & F. S. Rd. Co. v. Vaught,* 97 Ark. 241; *Stuttgart & Rice Belt Rd. Co.* v. *Kocourek,* 101 Ark. 47; *Russell* v. *Ry., supra; Ranck* v. *Cedar Rapids,* 111 N. W. 1030.

4. It is next contended that the damages are excessive. The jury were instructed, in assessing the damages, to disregard

any evidence of value on account of the ferry privileges, or interference with or loss of revenues by reason of the construction of the bridge. And, as already said, there was a wide range of opinion as to the value of the land taken, reaching all the way to the maximum of $100,000, most of the witnesses testifying that the value thereof, taking into consideration its convenience and availability for bridge site purposes was from $50,000 to $100,000. Some of them based their opinions upon the fact that the traffic across the ferry at that place was paying a revenue of $10,000 a year net, and that the interurban car line would cross it, and all the traffic would be enabled to use the bridge free. The width and depth of the river above and below was considered by some, while others took into consideration that a couple of acres of land on that side of the river near the land condemned had been purchased by the interurban railway company at $1,000 an acre not long before, and that some lands half a mile north and on the east side of the river had, twenty-five years before, when both towns were small, brought $500 an acre for a railroad bridge site, and estimated the value of the land for all purposes at from $75,000 to $100,000.

It was also shown that, in the sale of the lands to the railroad company for a bridge site, it agreed not to permit the use of its bridge for ordinary travel, or to in any way affect the business or revenue of the ferry, and that the street railway company, in the purchase of the two acres of land for its use, near the land condemned, for the price of $1,000 an acre, also agreed not to construct a ferry. The owner of these lands was also the owner of the lands sold to the railroad company and to the interurban or street railway at the times of the sales thereof, and of the ferry then and now, and regarded that he received more than the prices named for the land sold, since the one company bound itself not to permit the use of its bridge to affect the revenues of the ferry, and the other brought traffic to the ferry and bound itself not to establish one in opposition.

It was the business of the jury, who were acquainted with the witnesses and the lands, to determine the reasonable market value of the lands, based upon the statements and opinions of the witnesses testifying thereto and, after weighing

all the evidence under instructions more favorable to appellant than the law warranted, they fixed the damages at $10,000.

It was their duty to weigh the testimony and give to it such weight as it was entitled to, taking into consideration the means and opportunities of the witnesses for knowing what they testified about and the facts and reasons upon which their estimates were based.

They evidently greatly discounted all opinions of the witnesses that appeared unreasonable and extravagant; and, although it may be that $10,000 was more than the fair market value of the lands taken, it could only be assessed by the verdict of a jury upon the best evidence available to determine it, and we do not think, under the circumstances, that the amount of the verdict can be said to be excessive.

Finding no error in the record, the judgment is affirmed.