ARKANSAS STATE HIGHWAY COMMISSION v. BYARS.

5-32                                            256 S. W. 2d 738

Opinion delivered March 30, 1953.

Rehearing denied May 4, 1953.

*Phil H. Loh, III, William L. Terry* and *Clyman E. Izard,* for appellant.

*Franklin Wilder, Robinson & Edwards* and *Batchelor & Batchelor,* for appellee.

ROBINSON, Justice. This appeal grows out of an eminent domain proceeding wherein Crawford County and the Arkansas State Highway Department, appellants, acquired lands owned by the appellees, W. B. Byars and wife, Willie Catholene Byars, and Tony Christello and wife, Mardelle Christello, for a highway right-of-way. 9.405 acres were taken from the Byars; and from the Christellos 9.073 acres plus 1.316 acres and lots combined, which includes a portion of 10 lots in Monte Vista Subdivision to Alma, Arkansas, totalling a little over ten acres taken from the Christellos. The cases were consolidated and a jury gave the Byars a verdict in the sum of $25,000 and the Christellos $21,500. One witness for appellants testified that there had been an enhancement in value of the farms by reason of the location of the new road, and other witnesses for appellants estimated Christello's damages to be from $275 to $2,218.10; and damages to Byars from $846.27 to $4,499.25. The principal issue on appeal is whether the verdicts are excessive.

We will first discuss the Christello lands. The farm consists of 400 acres which Christello purchased in 1946 for the consideration of $17,500; and included in the purchase price was what is known as the Canyon Club, which he sold shortly thereafter for $7,800, resulting in the 400-acre farm actually costing him $9,700, or about $25 per acre. In 1949 he bought the Monte Vista Subdivision consisting of 198 lots as platted, for the consideration of $5,000. The witness Christello testified that he did not know how many lots were in the subdivision, that he had never counted them; but the plat introduced in evidence shows 198 lots. He also testified that there was other consideration, but was vague and indefinite as to what the other consideration consisted of and never did say

exactly what it was. No lots have been sold from this subdivision.

The 400 acres is divided by U. S. Highway 64, which henceforth will be referred to as old 64. 80 acres are located north of old 64 and do not join any of the other Christello property; about 180 acres are located south of old 64 and are not connected in any manner with the other lands except by a culvert under old 64, used as an underpass. This leaves approximately 140 acres in one block north of old 64, on which are located the improvements.

Old 64 swings sharply southwest a short distance before it reaches Christello's improvements, going in front of the buildings. The new road which is being built on lands taken from Christello continues westward at this point so that the new road will go to the rear of the improvements, severing the approximate 80 acres on which the improvements are located from an approximate 55 acres which will now be north of new 64. Old 64 is not being vacated or abandoned. So far as the farm land is concerned, it will be damaged to the extent of the loss of the 9 and a fraction acres, plus the severance from the 55 acres.

The right-of-way of the new highway is 200 feet in width. It crosses about 60 acres of Christello's farm land. It will be necessary to move a four-room tenant house and a barn, and to replace a dug well, which the Highway Department agrees to do. The Highway Department also agrees to construct new fences bordering the right-of-way where it crosses Christello's lands, and agrees to build an underpass under the right-of-way whereby livestock can be moved from the severed 55 acres to the acreage south of new 64 containing the improvements.

The farm is used for grazing from 50 to 100 head of livestock, and for raising hay. In addition to the farm land, a portion of 10 lots in Monte Vista Subdivision bordering on the right-of-way are being taken. The jury awarded the Christellos $21,500 as damages.

The situation of the Byars property is not so complicated. Byars raises livestock and has been in that business since 1948. His farm consists of 438 acres. All the land is in one block north of old 64, which runs in front of his improvements, but new 64 goes to the rear of the improvements and will sever about 16 acres of land on which the improvements are located from the other 422 acres. 9 and a fraction acres are being taken from Byars.

He bought 181 acres on which the improvements are located in 1948 at the cost of $25,000. Later he bought 80 acres from a Mr. Herrin for $1,600, 30 acres from George Wofford for $600, 156.56 acres from a Mr. Hawkins about two months before the trial for $2,664, and 40 acres from M. D. Wagnon for $1,900. Apparently he bought 487 acres for $31,764 or approximately $65 per acre, but sold a portion thereof leaving him now owning 438 acres. Of this 438 acres, about 156 acres were bought two months before the trial for a little over $17 an acre. He has been damaged by the loss of the 9 and a fraction acres, plus the severance of the 16 acres on which are located the improvements from the 422 acres. The Highway Department has agreed to build new fences bordering the right-of-way, build an underpass suitable for moving livestock from the property on which the improvements are located to the other portion, and to move whatever buildings it may be necessary to move. There was a jury verdict for Byars for damages in the sum of $25,000.

Is there substantial evidence to support the verdicts? If so, according to many, many decisions of this court the judgments must be affirmed and evidence must be viewed in the light most favorable to the appellee. On the other hand, if there is not substantial evidence to support the verdicts, the judgments must be reversed. We have reached the conclusion that there is no substantial evidence in the record to support either verdict.

There was no evidence introduced tending to prove the damages except the opinions of witnesses as to the value of the land taken and as to the market value of the properties before and after the taking. Where a witness

gives his opinion as to damages, such testimony must be considered in connection with related facts upon which the opinion is based. *St. Louis Southwestern Ry. Co.* v. *Braswell, Administrator,* 198 Ark. 143, 127 S. W. 2d 637.

To completely abstract here all of the testimony in the case would unduly extend this opinion, but the witness Christello testified that he had been running from 50 to 100 head of cattle on his place, that he cannot afford to run more; but gives no estimate as to the number of cattle the place will carry; says that he also cuts hay, but gives no indication of the amount of hay the place will produce or the value of the hay he has grown; says that he has a tenant house and barn that will have to be moved (but the Highway Department has agreed to move these structures); says that he has water piped to the various pastures (but the Highway Department has agreed not to disturb the water supply); says that 2½ acres of land that will border the right-of-way on the north is shaped so that the place where it joins the other lands will be only 10 feet in width (there is no showing that all the stock that could ever graze on this 2½ acres could not pass through a place 10 feet in width); says he has approximately 200 acres north of the new highway (the fact is that 80 acres of this alleged 200 acres is not connected with the other portion of the farm in any manner whatever and will not be affected to any extent by the new highway; and other than this 80 acres he will have only approximately 55 acres north of the new highway); states that the place is worth $65,000 (this would be approximately $162.50 an acre), and after the taking it will be worth only $40,000 (the so-called Block A is a strip of ground 105½ by 172 feet which was across the road from the Monte Vista Subdivision and connected to his 80 acres, which will be taken by the new right-of-way). He values one lot in Monte Vista Subdivision at $2,000, another at $5,800, and another at $5,800, although he paid only $5,000 for the entire 198 lots in the addition. Christello is in the insurance business and owns ½ interest in an office building in Fort Smith. He says that his pasture land alone is worth $1,200 an acre, but does not give

the number of head of stock the land will graze. He claims that the drainage will be impaired by the new right-of-way, but his testimony is not clear or convincing on that point.

W. D. Byars is a stock raiser and has been engaged in that business since 1948. 9 and a fraction acres of his land are being taken. He considers his farm worth $85,000; that it will be worth only $40,000 after the right-of-way goes through. His improvements will be on about 16 acres of ground separated from his other land by the highway right-of-way; a couple of his outbuildings will have to be moved (the Highway Department has agreed to do this); he claims there will be a drainage problem, but it appears that the highway right-of-way will improve the drainage rather than impair it; he values his pasture land at $1,000 an acre; however, there is no showing whatever as to any qualities of the land that would cause it to be worth such a figure; in fact, he bought 156.56 acres of his 438 acres about two months before the trial for a little over $17 per acre.

In addition to the testimony of Christello and Byars as to the alleged damages which they have suffered, Boyce Wofford who is in the produce business gave his opinion that Byars' place before the taking was worth $75,000, and after the taking will be worth from $40,000 to $45,000; Fred Vinsent, a farmer, gave his opinion that before the taking Byars' place was worth $75,000, and afterwards $35,000; Clarence Brown, a cattleman, gave his opinion that the Byars place before the taking was worth $75,000 and the taking of the 9 acres had depreciated it 50%; Sam Woods in the real estate business at Fort Smith gave his opinion that the Byars place was worth $75,000 before the taking and $45,000 afterwards. W. D. Arnold, a farmer, gave his opinion that before the taking the Byars place was worth $75,000 and afterwards $40,000 to $45,000; L. E. Ritchey, a grocerman, gave his opinion that before the taking the place was worth $75,-000 and afterwards $40,000 to $45,000; W. R. Cole who lives near Alma gave his opinion that the place was worth $75,000 to $80,000 and had been reduced to $45,000; Ver-

non Humphrey in the automobile business gave his opinion that before the taking the place was worth $75,000 and $48,000 afterwards. It is significant that all the above witnesses had the same opinion as to the exact value of the property before the taking. In addition, Donald M. Roderick, a real estate broker, gave his opinion that the Byars place was worth $65,000 before the taking and $45,000 afterwards.

Clarence Brown also gave the opinion that the Christello property was worth $65,000 before the taking and $35,000 afterwards; Sam Woods said the Christello place was worth $60,000 before the taking and $30,000 afterwards. Roderick gave his opinion that the Christello property was worth $55,000 before the taking and had been damaged $25,000. Arnold gave his opinion that the Christello place was worth $65,000 before the taking, $40,000 afterwards; W. R. Cole who says he lives around Alma, gave his opinion that the Christello place was worth $65,000 to $70,000 before the taking and had been reduced to $33,000. Humphrey gave his opinion that the place had been reduced from $65,000 to $32,500 by the taking.

There is no showing that any of the farm lands involved are suitable for any purpose except the production of livestock and hay. Yet not a single witness, including the owners themselves, gave any testimony whatever as to the number of livestock that the lands will support or the amount of feed that can be grown thereon. In determining the value of a livestock farm, one cannot ignore such material facts and arrive at an intelligent opinion.

Whether there is substantial evidence to support a verdict is not a question of fact, but one of law. Because a witness testifies as to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion. In *Missouri Pacific Transportation Co.* v. *Bell*, 197 Ark. 250, 122 S. W. 2d 958, this Court said: "Juries are not permitted to base their verdicts on speculation and conjecture, and as

to whether there is any substantial evidence to support the verdict is a question of law and not of fact." In *Sadler, Trustee, v. Scott,* 203 Ark. 648, 158 S. W. 2d 40, the Court quoted with approval from *St. Louis Southwestern Ry. Co. v. Braswell, Administrator,* 198 Ark. 143, 127 S. W. 2d 637, as follows: "All judges, both trial and appellate agree that to support a verdict the evidence must be of a convincing nature, imparting the qualities of reasonable certainty . . . it would seem, however, that in any view to be taken the issue is whether the evidence *is* substantial and *who* is to judge of that quality. If this is not a question of law, then substantiality loses its significance, with the result that *any* testimony may suffice. If we acquiesce in this construction, there is an abdication of judicial responsibility." It was further said in the Braswell case, "Books on evidence, and the cases, have much to say about 'speculation' and 'conjecture.' It is urged by those who adhere to the theory that the reasonableness of testimony, the probability of its truthfulness, the conclusions to be drawn from it, the inferences attaching to physical conditions, and to the attending circumstances, are matters of sole consideration of the finders of facts, and that a verdict based upon *any* evidence found by a jury to be sufficient to sustain its actions, should not be disturbed on appeal.

"The difficulty is in differentiating between *any* evidence and substantial evidence. . . . Must appellate judges close their eyes and their minds to the obvious fact that in a particular case the evidence, from its very nature, could not have been convincing, though it produced a given result? Shall we affirm that such evidence was *necessarily* substantial because it was favorably acted upon by the jury?"

In *Texas Illinois Natural Gas Pipeline Co. v. Lawhon,* 220 Ark. 952, 251 S. W. 2d 477, a pipeline company sought to take a right-of-way across a 150-acre farm. There was a verdict of $4,500 which this Court reduced to $3,000. There the Court said, "After a careful review of the testimony of all the witnesses giving their opinions as to the depreciation value of this 150-acre farm, we have con-

cluded that in no instance has a witness, by competent, testimony, stated substantial facts upon which to base such opinion as to decreased value . . . it is true that one or more witnesses for appellee placed the damage at a sum equalling the verdict returned by the jury; but the cross-examination of these witnesses fails to show any fair or reasonable basis for the opinion.''

In the *City of Harrison* v. *Moss,* 213 Ark. 721, 212 S. W. 2d 334, appellee Moss in a condemnation proceeding was given a judgment in the sum of $8,000 for 21.13 acres of land. This Court said, ''When his testimony is tested by his cross-examination as to the facts forming the basis of his opinion, we conclude there is no reasonable basis to support a verdict in excess of $6,500.''

In the case at bar, there is no showing that any of appellee's witnesses took into consideration the potentiality of the farms in producing those things raised thereon, namely livestock and feed. Therefore there was no sound basis for the opinion the witnesses gave as to the value of the farm and damages thereto.

Appellant urges error of the trial court in overruling a motion for continuance and in not granting a new trial because of certain answers given by a witness on cross-examination, which the trial court told the jury not to consider; but these points are not likely to arise in another trial.

Reversed and remanded for new trial.

HOLT, J., not participating.

ED. F. MCFADDIN, Justice (dissenting). I respectfully dissent because—as I see it—the majority opinion of this Court shows that it has invaded the province of the jury.

Our Constitution says, in Art. 2, § 7:

''The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; . . .''

Under this salutary provision, this Court has always held—even in eminent domain proceedings—(a) that the

jury's verdict will not be disturbed on appeal if supported by substantial evidence; and (b) that in viewing the evidence—to see if it is substantial—we view it in the light most favorable to the appellee. *Texas, etc. Ry. Co. v. Eddy,* 42 Ark. 527; *Springfield, etc. Ry. Co. v. Rhea,* 44 Ark. 258; *Fayetteville, etc. Ry. Co. v. Combs,* 51 Ark. 324, 11 S. W. 418; *Cloth v. Chicago, etc. Ry. Co.,* 97 Ark. 86, 132 S. W. 1005, Ann. Cas. 1912C, 1115; *Stuttgart, etc. Ry. Co. v. Kocourek,* 101 Ark. 47, 141 S. W. 511; *Griffin v. Searcy County,* 150 Ark. 423, 234 S. W. 270.

Notwithstanding the foregoing well established rules, this Court, in the present majority opinion, has proceeded to weigh the evidence as though the majority were an appellate jury instead of an appellate court. At least seven witnesses testified as to the value of each condemned tract before the taking and after the taking. The names of these witnesses, their occupations, and the values each gave, are detailed in two paragraphs of the majority opinion, and then immediately follows this paragraph in the majority opinion:

"There is no showing that any of the farm lands involved are suitable for any purpose except the production of livestock and hay. Yet not a single witness, including the owners themselves, gave any testimony whatever as to the number of livestock that the lands will support or the amount of feed that can be grown thereon. In determining the value of a livestock farm, one cannot ignore such material facts and arrive at an intelligent opinion."

Thus, the majority acted as a jury in testing the credibility of the witnesses and the weight to be given their testimony. And even in acting as a jury, the majority adopted the wrong test for a jury to use: the test of the damages in an eminent domain proceeding is not what the lands are worth for livestock and hay, but the most valuable purpose for which the land can be used. In *Ft. Smith, etc. District v. Scott,* 103 Ark. 405, 147 S. W. 440, we said:

"The measure of the owner's compensation for the land condemned is the market value thereof at the time of the taking for all purposes, comprehending its availa-

bility for any use to which it is plainly adapted, as well as the most valuable purpose for which it can be used and will bring most in the market.''

Not only did the majority apply the wrong rule for the jury, but the majority also invaded the trial court's authority. The majority opinion says the witnesses who testified as to the value of the land did not state how much feed the land would grow and how many livestock the land would support. It is *"new law"* for the Supreme Court to pass on such matters. Here is what we have heretofore said regarding the qualifications of witnesses to testify as to values. In *Ft. Smith, etc. District* v. *Scott, supra,* we said:

''The sole question here was the market value of the land, and the witnesses gave their opinions as to that value, basing them on different facts and reasons in support thereof. It is true, some of them had no knowledge of the sale of lands under like conditions for bridge site purposes, nor information as to the prices realized at such sales, nor were they expert engineers, but all who testified were intelligent men, long familiar with the lands taken and the locality and neighborhood where they were situated, knew their value for some purpose, and in giving their opinion as to the most valuable purpose for which they were adapted and could be used they stated their reasons for so doing. Their knowledge of the facts upon which their opinions were based and the reasons therefor and the value and weight thereof could have been and were 'readily and satisfactorily tested by cross-examination,' as said in *Texas & St. Louis Rd.* v. *Kirby,* 44 Ark. 103.

''The jury were capable of determining, and it was within their province to determine, the weight that should be accorded to the opinions of the witnesses, and we do not think there was any abuse of the discretion of the trial court in permitting the estimates of the witnesses and the reasons therefor to be submitted to the jury, or that any prejudicial error was committed in the introduction of the testimony.''

And in *McDonough* v. *Williams,* 86 Ark. 600, 112 S. W. 164, we said:

"The question whether a witness has shown sufficient knowledge concerning the value of property to give him a definite opinion on the subject is a matter, to some extent, within the sound discretion of the trial judge, and this court will not reverse for alleged error in this respect unless an abuse of such discretion appears. *St. Louis, Ark. & Tex. Rd.* v. *Anderson,* 39 Ark. 167; 17 Cyc. 30. No abuse of the court's discretion is shown here."

Here the trial judge held the witnesses to be competent: yet the majority is reweighing all their evidence. I have no desire to prolong this dissent: my purpose is to show that the majority has reversed the jury verdict and thereby substituted the views of the majority for those of the jury on the matter of the weight of the evidence and the credibility of the witnesses.