ARK. STATE HIGHWAY COMM. *v.* DUPREE.

5-1516                                              311 S. W. 2d 791

Opinion delivered April 7, 1958.

*Mehaffy, Smith & Williams,* by *John Williams; W. R. Thrasher, Dowell Anders, Edward Boyett* and *Bill Demmer,* for appellant.

*Catlett & Henderson,* for appellee.

SAM ROBINSON, Associate Justice.   This action was filed by the Arkansas State Highway Commission to condemn for highway purposes certain lands situated in Pulaski County.  A fraction over 59 acres were taken from the appellees.  The appellees filed an answer alleging that the 59 acres were part of a 3,000 acre tract; that the value of the land taken was $24,000; and that they had suffered damages in the sum of $50,000 by reason of a severance of the property.  Later an amended answer was filed in which damages of $200,000 were alleged.  There was a jury verdict in the sum of $100,-000.  On appeal the Highway Commission contends that the verdict is excessive.

Appellees own a little over 3,000 acres across which the highway is to be constructed.  A strip consisting of about 59 acres has been taken, leaving about 2,000 acres which will be on the west side of the highway and 1,000 acres on the east side.  The highest valuation placed on the property taken is $200 per acre, which would make a total of about $12,000 as the highest value placed on the land taken.  In addition, it would be necessary for the property owners to fence each side of the new high-

way, the highest estimate of the cost of such fencing being $5,400, which, added to the $12,000 for the land taken, would total about $17,400. This portion of the verdict is sustained by substantial evidence. The question is whether there is substantial evidence to sustain the balance of the verdict amounting to about $83,000, which the jury must have given as damages due to a severance of the property.

The property is located northeast of North Little Rock, the south line of the property being about six miles from the city limits. Appellees acquired the land in 1928 and have farmed it since that time, but the earnings of the place are shown only for the years 1954, 1955 and 1956: $13,019.76 for 1954; $11,585.88 for 1955; and $12,650.83 for 1956. One of the appellees, Mr. C. S. Dupree, gives practically all of his time to the operation of the place, and two of his brothers give a portion of their time, but in arriving at the net amount earned by the farm, nothing was allowed for the work done by the owners.

The owners contend that the market value of the property has been depreciated to the full extent or in excess of the amount of damages allowed by the jury because of the severance. Several witnesses gave testimony to the effect that in their opinion the damages caused by the severance exceed the amount awarded by the jury. If such evidence is substantial, the judgment must be affirmed. The witnesses on behalf of the landowners estimate the damages at from $87,000 to $161,-000, and witnesses on behalf of the Highway Commission give estimates of damage from a low of $8,200 to a high of $12,200. The assessed valuation of the entire 3,000 acres for 1956 is $21,815. Whether there is substantial evidence to support the verdict is a question of law. *Arkansas State Highway Comm.* v. *Byars*, 221 Ark. 845, 256 S. W. 2d 738; *Mo. Pac. Transportation Co.* v. *Bell*, 197 Ark. 250, 122 S. W. 2d 958.

On the west side of the strip taken for the new highway is a cattle barn and corrals. This is on the tract which would contain about 2,000 acres. There are no

similar facilities on the east side. The barn is 100 ft. x 100 ft. and is used for storing seed and also feed for the cattle. Part of the feed is stored in temporary silos made of wire and paper. This method has been found to be more economical. There are four tractors on the place and four hired men. Feed for the cattle is moved in trailers attached to the tractors. There are five stock ponds and one borrow pit where the stock can drink. Two of these are on the east side of the new right of way. There are 1,200 acres of crop land, 1,000 acres in pasture and open timber, and 860 in timber. The number of acres in particular crops and the production given for one of the years are as follows: 203 acres in cotton (100 bales produced); 238 acres in hay; 30 acres in beans; 60 acres in corn; 120 acres in silage. Mr. C. S. Dupree, one of the owners, values the place at $150 per acre straight across, for a total of $450,000. But he says that after the severance the property will be worth only $100 per acre, thereby giving $150,000 as his estimate of the damages due to the severance. It also appears that there will be a strip of land between a drainage ditch and the new road on which at the north end it will be difficult to operate four-row farm equipment. Mr. Dupree also says it will be difficult to cultivate any closer than about 20 feet from the highway fence, and this will cause some loss. He further contends that labor, equipment and livestock cannot be moved across the new highway and therefore the place cannot be worked as one unit. He further states that to move farming equipment across the highway it would be necessary to purchase insurance which would cost about $100 per month. According to undisputed evidence the Highway Commission will provide a grade crossing.

Mr. W. C. Wilkinson, of Summerville, Tennessee, is in the mortgage loan business. He testified that the value of the property before the taking was $308,770 and after the taking the value was reduced to $220,000, the damages amounting to $88,770. He testified in detail as to how he arrived at the valuation before the taking, but he gives no clue as to how he arrived at the amount of damages mentioned.

Mr. Floyd Fulkerson, who farms in Pulaski County, testified that appellees' property is better suited for a large cattle operation than any other purpose and that it would support 800 or 900 head of cattle. He gave an over-all value of $150 per acre before the taking, and stated that the damages would amount to about 25 per cent; that the damages due to the severance would amount to approximately $129,000. Mr. Fulkerson gives no substantial testimony as to why the severance would reduce the property in value by 25 per cent when used as a large cattle operation. It is shown by the evidence that the owners now have 289 head of cattle on the property, but there is not a scintilla of evidence that they have ever made any money whatever out of cattle. Of course, it was to the interest of the owners to show the full earning capacity of the place, and yet they produced not one iota of evidence to the effect that they had ever made any money whatever out of cattle. If the place was worth from $450,000 to $600,000, as estimated by witnesses produced by the owners, then, based on the capacity to support from 800 to 900 head of cattle, there would be an investment of from $500 to over $600 in land to support one cow. The record is completely void of any evidence to the effect that a person could pay such a huge amount for land on which to run cattle, and make a profit. Of course, the amount of profit that could be made on the land from farming or raising livestock is of primary importance here as going to show the value of the land, because there is no contention that the potential value of the property for industrial or residential purposes because of its location is lessened by reason of the new road.

Mr. William A. Payne, real estate appraiser engaged in the mortgage loan business, testified that the value of the property before the taking was $371,500 and after the taking $287,500, and he gave $87,000 as the amount of damages, including the cost of fencing. Of course, the witness could not arrive at a sound valuation without taking into consideration what the property would produce, and Mr. Payne did not know if any cotton is planted on the place, and thought the cotton allotment to be

2,200 acres. The Government pays $46 per acre if the land is placed in the Land Bank.

Mr. George Ed McCain has a place across the road from the property involved in this litigation. He places the damages at 20 per cent to 25 per cent of the total value of the place. Mr. McCain thinks the property is worth $200 per acre straight across, or $600,000 for the 3,000 acres, and that it will be depreciated $150,000 to $200,000 by the construction of the road. Mr. McCain gives no satisfactory basis for placing such a huge market value on the property or for the amount of damages he mentioned.

The owners have been operating this place since 1928 and there is no showing that they have ever made over $14,000 per year out of the property, and in arriving at this figure as to the profit made, nothing is allowed for the work the owners do in connection with the operation of the place. As heretofore stated, Mr. C. S. Dupree gives his full time to looking after the place, and his two brothers give part of their time. Certainly between the three of them their services would be worth at the minimum a total of $9,000, and when this charge is correctly made it would leave a net profit on the place of not over $6,000 per year. No witness says the place is worth from $380,000 to $600,000 because it would produce a net of some $6,000 to $14,000 per year from crops, and there is no showing that the owners have ever made a dime out of cattle.

This kind of case constitutes one of the most difficult problems with which this Court has to deal. The law is firmly established that if there is any substantial evidence to support a jury verdict it must be affirmed on appeal. But, as heretofore pointed out, the question of whether there is substantial evidence to support the verdict is not a question of fact, but a question of law. There is some evidence in this case to the effect that the appellees have been damaged over $160,000. But does this mean that if there had been a jury verdict for that amount this Court would have to affirm it, when the

Court does not think there is substantial evidence to sustain such a verdict?

In the *Byars* case, *supra* (221 Ark. 845, 256 S. W. 2d 738), we quoted from *St. Louis Southwestern Ry. Co. v. Braswell, Administrator,* 198 Ark. 143, 127 S. W. 2d 637, as follows (221 Ark. 852) : " 'The difficulty is in differentiating between *any* evidence and substantial evidence . . . Must appellate judges close their eyes and their minds to the obvious fact that in a particular case the evidence, from its very nature, could not have been convincing, though it produced a given result? Shall we affirm that such evidence was *necessarily* substantial because it was favorably acted upon by the jury?' "

When the appellees are allowed the highest value placed by any witness on the land taken ($200 per acre) and the highest amount estimated for the construction of fences ($5,400) there is left a jury verdict of about $83,-000 for damages due to severance. When all the evidence in this case favorable to the appellees is considered, disregarding the evidence produced by the appellant and favorable to the appellant, we do not believe that it can be said there is substantial evidence to support the verdict. And, although this Court is very reluctant to set aside the jury verdict, we would be derelict in our duty if we failed to set aside such a verdict when, after a careful examination of the record and the briefs in the case, we do not think the evidence is substantial to support the verdict. Of course, the next question is what would be a proper amount. We have reached the conclusion that a judgment for $62,400 can be sustained. If, within 15 judicial days, appellee will file a remittitur of $37,600, the judgment will be affirmed. Otherwise, it will be reversed and remanded for a new trial.

HARRIS, C. J., and McFADDIN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I find no legal basis for reducing this judgment. I think it should be pointed out that there is no assignment of error in regard to the admission or exclusion of evidence, no complaint as to the instructions, nor to the argument of coun-

sel. The remittitur is determined simply because the Court feels the amount awarded is too large, though it is conceded that a much higher figure of damage was testified to by some of appellees' witnesses. The majority say this was not substantial evidence, but we have many times held that the testimony of neighbors and others familiar with the property is competent evidence. *City of Little Rock, et al. v. Octavia S. Sawyer, et al.,* 228 Ark. 516, 309 S. W. 2d 30; *Fort Smith and Van Buren District v. Scott,* 103 Ark. 405, 147 S. W. 440. In the latter case, this Court said:

"The question of market value is to be determined upon the testimony of those who have knowledge upon that subject or whose business or experience entitles their opinions to weight and is usually established by the opinions of witnesses who are familiar with the property taken, this being one of the recognized exceptions to the general rule that witnesses are required to state facts and not express opinions.

\* \* \*

" 'Intelligent men, who have resided a long time in the place and who are acquainted with the land in question, and say that they know its value, are competent although they are merchants or farmers and have never bought or sold land in the place.' \* \* \*"

Appellant argues that the verdict is so excessive as to indicate that it must have been founded upon passion and prejudice; however, nothing is pointed out in the record to substantiate this argument, except that the highway was referred to several times as a "speedway," a concrete culvert beneath the highway as a likely place for "water moccasins and snakes," and a few other remarks of a similar nature—nor does it appear that appellant objected to any of these statements. It is hardly plausible to believe that these remarks "worked the jury into such a frenzy" as to cause them to ignore all logic, and their oaths as jurors, and result in their bringing in a verdict based on outraged feelings.

It simply appears to me that this Court is substituting its judgment for that of the jury.

I therefore respectfully dissent.

Justice McFADDIN joins in this dissent.