COMBS v. LAKE.

Opinion delivered June 21, 1909.

1. EVIDENCE—VALUE OF LAND—OPINION OF NONEXPERT.—A nonexpert witness may testify his opinion as to the usable value of land for certain purposes, after testifying the facts upon which such opinion is based. (Page 132.)

2. EJECTMENT—USABLE VALUE OF LAND.—In an action to recover land wrongfully held by defendant where the evidence showed that the land was wrongfully used by defendant for ferry purposes, that defendant had an exclusive ferry privilege at that place, and that the land was worthless except for ferry purposes, it was not error to instruct the jury that the usable value of the land was its value for ferry purposes. (Page 133.)

3. EVIDENCE—OPINIONS AS TO VALUE.—The opinions of witnesses having knowledge of the particular subject are admissible on questions of value. (Page 133.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

STATEMENT BY THE COURT.

This is the second appeal in this case. The case on the first appeal is reported in 84 Ark. 21 (*Lake* v. *Combs*), where the issues and facts are fully stated. On the former appeal we reversed and remanded the cause "with instructions to proceed with the suit for the recovery of the land and the usable value thereof from the date Combs took possession." When the cause on remand reached the lower court, additional pleadings were unnecessarily filed to present the only issue that could be presented under the mandate, to-wit: "the recovery of the land and the usable value thereof."

At the last trial appellant Lake testified: "I claim damage for what the land would be worth from July 1, 1905, to this date.

I was offered $300 a year for it if I would deliver the place that Combs holds with the lands so that the ferry could be put in and operated from that place, but I could not get possession, as Combs held it, and so lost the deal. The place that Combs has his wire cable attached to is worth $300 a year to operate a ferry from, and if Combs would give it up I could get $300 a year for it, but he persists in holding it because it is the best on the Lake land to attach a ferry to and get out from the river." Appellant objected to the above testimony as incompetent, irrelevant and immaterial, and because the witness was not an expert on the question of damage value.

Witness further testified over appellant's objection as follows: "And what the children now want is their land and what its usable value is worth from July 1, 1905, to date, and which is worth $300 per year." The appellant duly excepted to the ruling of the court in admitting this testimony. In varying form the testimony of this witness to the above effect was given over appellant's objection, to which he duly excepted. The testimony of this witness further showed that the usable value of the land in controversy disconnected from ferry privileges was nothing. Appellee Lake further testified that the only place that the appellant's ferry touched the land was from the line where the cable crosses thirty feet in the air to the iron rod where it is fastened, and this was a strip one inch wide and one hundred feet long; that appellant had prevented the Lake heirs from running a ferry, that appellee Lake had demanded possession of the appellant, and he had refused to give it up.

The appellant in his own behalf testified in part as follows:

"I am the owner of this ferry, and I am in possession of the land on the Cotter side of the river and on the Marion County (lake) side of the river the ferry lands at the public road. This road lies between the river bank and the land where the iron stake is driven to which the cable is fastened. This iron stake or bar was put in about fifteen years ago by me with Mr. Lake's consent, and we used it a number of years year and year about— Lake and myself—before I sold my land to the Redbud Realty Company. In 1903 Lake sold the ferry to Wilbur, and through a company to Cornell, who sold the ferry to me. I have the ferry franchise license from Marion and Baxter counties. It was

transferred to me when I bought from Cornell, and it has been renewed to me from year to year since. There is another ferry about a quarter of a mile above there. The operation of this Lake ferry is a losing proposition, and I have offered to let any one have it who will run it and keep it up. The Lake ferry is the one which has the cable anchored to the land about which this suit is over.

"Mr. Lake, if he could get a license to operate a ferry, owns the land just below and just above the ferry, and he could put a cable across the river and anchor it on the bluff, and my possession and the attachment of my wire to that iron rod would not interfere with his doing so, but I would enjoin him if he undertook to run one there. I own the upper ferry, and I am a stockholder and am interested in the Redbud Realty Company, which owns the land on the Cotter side of the river, and I have permission from them to operate the ferry from that side of the bank. In high water we have to suspend the operation of the ferry as we cannot land on the Lake side of the ferry. If the court should eject me from the Lake land, and make me move my cable from the iron rod, I would fasten it to the trees. The anchor on the Lake land is not necessary to the operation and maintenance of the ferry. I took the wire cable loose from where Wilbur and his crowd had fastened it, and moved it back upon the Lake land, and fastened it to the iron bar or rod because it is the best and safest place for it. But there are other places in the bluff just above and just below where my ferry is, but they are on the Lake land, too. Where I fastened my cable, it is so high above the road that it does not interfere with any one passing. This is an entirely different ferry from the one that Lake and I operated year about, and has no connection with it, as all interest I then had in the ferry lapsed."

The appellant asked the court to instruct the jury to return a verdict in his favor, which request the court refused, and appellant excepted. The court then instructed the jury as follows:

"As I understand it, the opinion of the Supreme Court gives the plaintiff the possession of the land, and limits the trial here to the issue of the usable value of the land. You will return a verdict for plaintiff for the possession of the land, together with a reasonable amount for the usable value of the land by Combs,

considering the use it is put to, and whether in operation of the ferry it can be tied to a tree and anchoring the cable some other place." The appellant duly excepted to the giving of the above instruction.

After the argument of counsel, the court said to the jury: "Counsel have presented the question to you. I instruct you that the usable value of the land is the value for the purpose of tying a cable to it, and does not include the value of the boat." The appellant excepted to the instruction.

The jury returned a verdict in favor of appellees for the sum of $569.50. Judgment was entered for that sum after motion for new trial had been overruled. The motion assigned as error the rulings of the court, to which exceptions had been duly saved, and the further grounds that the verdict was contrary to the evidence, and that the amount thereof was excessive.

This appeal has been duly prosecuted.

*Z. M. Horton* and *Allyn Smith,* for appellant.

1. The evidence of C. A. Lake was irrelevant because (1) It was only the opinion of the witnesses, and not a statement of facts from which the jury could draw a conclusion. 4 Barb. (S. C.) 256, 261; 4 Denio 311; 17 Wend. 137-161; 19 Ohio 142; 5 Hill 608; 6 Kan. 54; 29 Barb. 422; 47 Ark. 497; 76 Ark. 549: 56 Ark. 581. (2) The value of the ferry privilege was not the measure of damages on the remand of this cause by this court (84 Ark. 21). The Lakes had no ferry privilege. 25 Ark. 26; 20 *Id.* 561; Kirby's Dig., § § 4556-9, 3562, 3568-9-70. The question was the value, the usable value; not mere speculative damages. 57 Ark. 207; 47 *Id.* 527.

2. Only nominal damages should have been allowed. 5 Words & Phr. Judicially Defined, 4815-16. At most, a recovery for only a fair rental value for the time unlawfully detained could be had. 58 Ark. 616; 36 *Id.* 525; 12 Minn. 426; 70 Ill. 426; 75 *Id.* 473; 20 Mo. 442; 23 Wis. 365. See also 43 Wis. 183; 46 *Id.* 625.

3. The verdict is not supported, and the damages are excessive. 70 Ark. 385; 57 *Id.* 468; 42 *Id.* 527; Kirby's Dig., § 6215, subd. 4, 5.

*W. S. Chastain,* for appellee.

1. The usable value of the land is the only question left in this case. 84 Ark. 21.

2. Lake's evidence was not his opinion. He laid the proper foundation of facts, data and circumstances. 66 Ark. 498; 70 *Id.* 23; 51 *Id.* 324; 79 *Id.* 252; 86 Ark. 91. Besides, if incompetent, it did not prejudice. 76 Ark. 280.

2. Where a defendant is trespassing, evidence that an annual rent of $300 was reasonable was perfectly competent. 58 Ark. 612; 31 Ark. 344.

3. The verdict is supported by the evidence, the damages are not excessive, and this court will not reverse. 64 Ark. 238; 70 Ark. 427; 69 Ark. 134; 23 Ark. 115; 41 *Id.* 202.

WOOD, J., (after stating the facts). First. It appears that appellee Lake "was offered $300 a year for it if he would deliver the place that Combs (appellant) holds with the lands, so that the ferry could be put in and operated from that place." Appellee could get $300 a year for it. Hence he testified that it was worth $300 per year. After the statement of this fact the jury could draw the conclusion as well as appellee that the usable value of the land for ferry purposes was $300 per year. But it was not error, at least not prejudicial error, for him to state that it was worth $300 a year to operate a ferry from, after he had given in evidence the fact which, if believed, showed that it would have yielded its owners that sum. One of the conditions on which the opinions of nonexpert witnesses is received is "that the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding." *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 137, approved by this court in *Little Rock Traction & Electric Co.* v. *Nelson,* 66 Ark. 494, 498.

The testimony objected to did not come within the familiar rule excluding evidence that is the mere opinion of the witness as to the amount of damages sustained to person or property. *Little Rock Ry. Co.* v. *Hogins,* 47 Ark. 497; Sedgwick on Damages, pp. 158, 159, and cases cited in appellant's brief.

This is not a case where one is seeking to recover damages for personal injuries or for injuries to property. But it is a case merely of showing the usable value of land, and the witness may give his opinion of what that value is, basing it upon statement

of facts, as was done in the case at bar, to justify the opinion. It is rather the case of where there is no room to measure the damages except in one way, _i. e._, what the land was worth for the uses to which it was adapted. The opinions of witnesses having knowledge of the particular subject are generally held admissible on questions of value." Sutherland on Damages, § 843, p. 2511. See also § 654. See also _St. Louis, I. M. & S. Ry. Co._ v. _Brooksher_, 86 Ark. 91.

Second.- The instructions given show that the court comprehended the only issue that the former opinion of this court remanded to it for trial, and correctly submitted that issue to the jury. Under the evidence, it was a jury question, and there was evidence to sustain the verdict in the sum rendered.

Finding no prejudicial error, the judgment must be affirmed.