PENN-NATIONAL HARDWARE MUTUAL *v.* GRIFFIN.

Opinion delivered July 4, 1927.

1. INSURANCE—ITEMIZED PROOF OF DAMAGE.—An insurance policy providing that in case of fire insured should separate the damaged and undamaged personal property, and make an inventory thereof *held* not to require segregation and valuation of each item of merchandise in the stock, where there was a general damage to the stock; the damage being properly proved by testimony of experts as to the percentage of loss.

2. EVIDENCE—TESTIMONY OF MERCHANTS AS TO DAMAGE.—Testimony of merchants who examined insured's merchandise after damage by smoke and water, estimating the loss in percentages of value of stock as a whole, *held* competent as that of experts in an action on a fire insurance policy.

3. INSURANCE—CONSTRUCTION OF POLICY.—Insurance contracts must receive a reasonable construction, so as to effectuate the intention of the parties.

4. INSURANCE—PROOF OF LOSS.—Whether insured complied with notice and proof of loss requirements of fire policy *held* to present question for the jury.

Appeal from Pope Circuit Court; *J. T. Bullock,* Judge; affirmed.

*McMillen & Scott,* for appellant.

*Hays, Priddy & Rorex,* for appellee.

WOOD, J. This is an action by J. L. Griffin, doing business as Griffin Mercantile Company, hereafter called appellee, against the Penn-National Hardware Mutual of Huntington, Pennsylvania, issuing the National Fire Underwriters' policy, and the surety on its bond, the American Surety Company, hereafter called the appellants.

The appellee set up his policy of insurance, and alleged that, on the 13th of January, 1925, he sustained a loss by fire to his stock of goods in the sum of $1,446.51

and to his furniture and fixtures in the sum of $200, making a total sum of $1,646.51, for which he prayed judgment, with 12 per cent. interest, penalty, and attorneys' fees.

The appellants entered a general denial to the allegations of the complaint, and alleged that the appellee had been requested to set out in detail the amount of his loss, showing each item of merchandise and furniture and fixtures and the amount of loss or damage on each item. The appellants also moved the court to require the appellee to make his complaint more specific. In response to the motion to make more specific the appellee alleged that his damage was occasioned almost entirely by smoke and water, and was of such a general character that it was impossible for him to itemize specifically the articles damaged. The appellee further alleged that the fire was reported immediately, and an adjuster of the company looked over the loss and noted the amount of the damage to the appellee; that he had taken an inventory of his stock on January 1, 1925, twelve days before the fire occurred, which inventory he tendered to the appellants, and showed the purchases and cash sales up to the date of the fire; that appellee estimated his damage to his stock as being fifteen per cent. of the amount thereof at the time of the fire. The court overruled the appellants' motion to make more specific, to which ruling the appellants duly excepted.

The appellee identified and introduced his policy, which was a regular standard form, insuring appellee's stock of merchandise in the sum of $5,000 and his furniture and fixtures in the sum of $1,500, on which the premium was $131.30. The policy contained a three-fourths clause, also a record warranty clause providing that the assured "will keep and preserve all inventories of stock taken and all books made and prepared showing the record of business transactions during the current year and the preceding calendar year, and that such books shall be kept in a fire-proof safe, and, in the event of loss or damage, the books and inventories are to be

delivered to the company for examination or the policy would be null and void and no suit or action could be maintained thereon.   The policy also contained the following provision:

"If fire occur, the insured shall give immediate notice of any loss in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon; all other insurance.   *   *   *   The insured, as often as required, shall exhibit to any person designated by the company all that remains of any property herein described   *   *   *   and shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative."

The appellee testified that the fire which damaged his property originated in the City Bakery, which was located next door to appellee, about 9:30 in the morning. It was caused by the explosion of a gasoline stove.   The bakery was on fire when the fire department arrived. Lots of water was poured on the fire, and appellee's damage was caused by water, steam and smoke.   Everything was damp in appellee's store, like on a foggy morning— steam, smoke and ashes all over the counters and showcases.   The damage extended the entire area of the store. Every one in there had to get out and stay out.   The smoke stayed in the store about a couple of hours. Appellee's merchandise was out on display where people could see it, with price tags on everything, on the variety store order.   The largest part of appellee's stock of merchandise was exposed.   Nearly everything that was

hanging up was practically ruined. Lots of these goods appellee could not sell, and what he did sell he had to sell awfully cheap. Appellee had a balcony in the rear of his store, about ten feet square, which was a kind of store room where he kept everything, so as to give room downstairs for display. The appellee generally kept about half the stock up in the balcony. The rear of the store was in a terrible condition. The front was not quite so bad, but it was brown and black to the front. The greatest damage was in the rear of the store, where the smoke came from. There were cracks in the glass front windows, and the black smoke came out of those cracks. A third or half of the goods in the balcony was wet and spattered. The water dripped through the balcony on the floor, and was as deep as the soles of your shoes on the floor. Appellee had to throw away two or three hundred dollars' worth of goods. He had on hand at the time goods of the value of $9,643.43. That was the estimate made from the inventory taken the first of the year, deducting therefrom the amount of the purchases up to the time of the fire and the cash sales to that date. The appellee looked over his stock of goods carefully, and cleaned it up. He thought he was damaged 25 per cent. on his stock of goods, but concluded to settle, if the appellants were willing to pay, at 15 per cent. He placed the figures at 15 per cent. because he wished to induce appellants to pay without a lawsuit. Appellee stated that his furniture and fixtures in the store were also damaged, and his testimony in detail explains how they were damaged, which damage he estimated to be at least $20. He estimated his entire damage at $1,646.51. Appellee notified the insurance company the next day, and made proof of loss within sixty days. On January 24, 1925, the insurance company wrote to the appellee stating that it had been notified that appellee had sustained damage on account of smoke and water from the fire, and that the company had requested its agent, Col. J. W. Powell, of Little Rock, Arkansas, to represent the company in the adjustment of the loss, and that appel-

lee would hear from him shortly in connection therewith. Col. Powell did not come, and in about a month and a half or two months an adjuster did come. In the meantime appellee received a letter from Col. Powell, the adjuster, dated March 2, 1925, in which he stated that he had received appellee's letter of January 27, complaining that appellee's loss had not been adjusted, and stating that he knew nothing of appellee's loss at the time he was in Russellville adjusting other losses; that, since he had received appellee's letter, he had not had time to return to Russellville, but that he would get there as soon as possible. Appellee also received a letter signed by J. W. Powell, adjuster, dated January 28, 1925, in which he stated that the loss had been reported and that he would take the matter up as soon as possible, and advised the appellee to take an inventory of his loss and to write fully about it. In reply to this letter the appellee, on January 29, 1925, wrote to Col. Powell, describing the nature of the fire, the result of same, and the injury and damage to his goods, and stating that he did not know what particular items to list; that it was a general smoke damage all over the store and a slight water damage, some of the goods being knocked down in the dirt and water by the firemen and others passing through the building at the time of the fire.

On cross-examination the appellee details further the character of damage that he sustained, and stated that he had only made a general estimate of his damage; that he did not furnish an estimate to Powell, the adjuster. He did not ask for any. Scott came to Russellville, and said something about the list, and that he wanted to see the goods, and was told by the appellee that most of the damaged goods had been sold or thrown away, and therefore he did not furnish any inventory. Some of appellee's goods were damaged about 80 per cent., some 50 per cent., and some not at all.

Another witness, who was a clerk in appellee's store, testified that he took the inventory of the stock, and that it was between nine and ten thousand dollars. He testi-

fied to the general damage, and his testimony tends to corroborate the testimony of the appellee as' to such damage.

Another witness, a merchant who had been engaged in the mercantile business in Russellville for many years and had had an opportunity to inspect appellee's store during and after the fire, stated that appellee had sustained a damage to his stock of goods by reason of the fire which, in his opinion, was between 15 and 25 per cent. Another witness, a banker, who had never been in the mercantile business, stated that, if he were buying the stock, he would discount it on the general reputation of a fire, and, in his opinion, the appellee had been damaged between fifteen and twenty per cent.

The owner of the building, who saw the condition of the stock of goods about two or three hours after the fire, stated that he considered the damage to the stock was perhaps twenty-five per cent. He looked at the stock, and it seemed to be considerably damaged.

The appellee introduced the insurance company's bond in the sum of $20,000, binding the company to pay promptly all claims arising by virtue of any policy issued by the fire insurance company. The appellee introduced the chief of the fire department and two other members of the fire department, who testified to the effect that they were on duty and at the scene of the fire on January 13, 1925. Two of them testified that the appellee was not greatly damaged. The chief estimated that the damage was between two hundred and two hundred and fifty dollars—he thought that $250 would cover the whole loss.

F. W. Scott testified that he was the adjuster of the defendant insurance company; that he called on the appellee in March, 1925, and asked him regarding his damage, and requested him to show the witness his inventory and his books, but appellee did not comply with his request. Witness asked appellee to show him some of the damage, but appellee replied, "Well, there is my stock—look it over." When he asked appellee to show him the books or something to give him assistance

so that he could arrive at the loss, appellee replied, "There is the stock— go to it." Witness walked around through the stock and found slight damage—couldn't tell whether it was shop-worn or damaged by smoke. Witness was not given any assistance to arrive at any part of the loss. Witness was the first man on the ground to look after the loss, and the reason he did not get there sooner was that he was overcrowded. Witness was not the company's representative except on this particular loss, which he had been asked to adjust by Mr. Powell, the adjuster of the company, four or five days before the witness came. Witness exhibited a proof of loss signed by the appellee showing that it was signed and sworn to by appellee on March 11, 1925, with a notation thereon that same was received by the company on March 16, 1925. Witness further stated that appellee had put on a fire sale about the tenth of February, and witness believed that all the damaged stock had been disposed of, and it would therefore be impossible to arrive at any loss or damage to the stock.

The appellee was recalled, and testified that he had sent in two proofs of loss, both sworn to, and that one of them had been sent within the required sixty days. Witness had received no receipt for either, but he had a letter from J. W. Powell stating that he could not accept the paper purporting to be the proof of loss, which was the first one sent.

The appellants prayed the court to instruct the jury to return a verdict in their favor. It was the theory of appellants that they were not liable under the policy and bond unless the appellee could specify the articles of merchandise, furniture and fixtures damaged or lost by the fire, and place an estimate of value and damage on each item claimed to have been damaged or lost by reason of the fire. The appellants presented appropriate prayers for instructions setting forth their theory, which the court refused. The court instructed the jury, at the request of the appellee, to the effect that the burden was on the appellee to prove by a preponderance of the evi-

dence the allegations of his complaint to the effect that his goods were damaged as alleged, and, if the appellee had done that and had complied with the terms of the policy in regard to furnishing the proof of loss, he was entitled to recover whatever damages he had sustained by reason of the fire, and that, in arriving at a verdict, the jury should take into consideration the value of the stock of goods at the time of the fire and immediately after the fire. The appellee had claimed that his stock of goods was worth fifteen per cent. less after the fire than before; that this was an issue for the jury, and, if they found in favor of the appellee, the jury should return a verdict for whatever amount of damages they found he had sustained. If the jury found in favor of the appellants, they should return a verdict accordingly. The court also instructed the jury that, if the appellee had failed to furnish the proof of loss required by the conditions of the policy, their verdict should be in favor of the appellants.

The jury returned a verdict in favor of the appellee against the appellants in the sum of $1,631.50, with interest at six per cent. from March 14, 1925. Judgment was entered in favor of the appellee against the appellants for that sum, from which is this appeal.

1. The appellants contend that the appellee's proof is too remote and speculative to entitle him to recover under the policy, because he does not point out the particular items of merchandise lost or damaged, or the particular articles of furniture or fixtures lost or damaged, nor specify the value of any particular item and the loss or damage thereto. This contention is wholly unsound. The policy under which the appellee seeks to recover insures his entire stock of merchandise to the extent of $5,000 and his furniture and fixtures to the extent of $1,500 "against all direct loss or damage by fire," etc. There is a provision in the policy to the effect that the company shall not be liable beyond the actual cash value of the property at the time of the loss or damage, and

such loss or damage shall be ascertained or estimated according to such actual cash value, with proper reduction for depreciation, however caused, and shall in no event exceed what it would then cost the assured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and the company, or, if they differ, then by appraisers as hereinafter provided,'' etc.    In the notice of loss and proof of loss clause it is provided: ''If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quality and cost of each article and the amount claimed thereon.''

These provisions of the policy show that, where a loss occurs within the terms of the policy, the insured is entitled to recover to the extent of the loss, whether it be entire or partial, and he is entitled to make proof of the damage he has sustained by any competent evidence of such damage.   This court, in effect, has already ruled against the above contention of the appellants in the case of *General Fire Ext. Co.* v. *Beal-Doyle Dry Goods Company,* 110 Ark. 49, 56, 160 S. W. 889, 891 (Ann. Cas. 1915D, 791), where a similar question was presented, and where, at page 56, we said: ''The witness showed that, by their long experience in handling goods of the kind that were damaged, they had knowledge of the value of such goods before they were damaged; and the opportunity afforded them for the examination of the goods after they had been damaged was sufficient to enable them to estimate the extent of that damage.   It was not necessary for them to count each piece, or to measure the number of yards to the piece.   Their familiarity with such matters enabled them to tell approximately what the per cent. of damage to the whole lot was by an examination of the piles of goods,

without a minute examination of each particular piece. The testimony shows that the witnesses made an examination of the goods sufficiently specific and particular to enable them to testify that the goods were damaged 50 per cent. of their value. The testimony of these witnesses was manifestly to the effect that these goods, by reason of the damage they had sustained, were worth to appellee only half as much in the market where appellee would have to sell them as they would have been had they not been damaged. It was the opinion of experts about a subject-matter of which they showed that they were thoroughly conversant. It was a subject-matter, too, that called for and made the testimony of experts proper. The opinions of witnesses having a special knowledge of a particular subject, a knowledge peculiar to them by reason of their observation and experience in connection with such subject, are generally admissible in evidence. The weight to be given to the testimony of such witnesses is for the jury, but it is competent for their consideration. *St. L. I. M. & S. Ry. Co.* v. *Brookshire,* 86 Ark. 91, 109 S. W. 1169; *Combs* v. *Lake,* 91 Ark. 128, 120 S. W. 977; see also *Hutchinson* v. *Poyer,* 44 N. W. 327, 78 Mich. 337.''

At least one of the witnesses who testified for the appellee, to-wit, the banker Neil, was not an expert, and if the appellants had objected to this testimony on that ground and that he was therefore an incompetent witness, the trial court doubtless would have excluded his testimony from the jury. The other witnesses who testified as to appellee's damage were merchants of experience in the business in which appellee was engaged, and had had an opportunity to examine appellee's merchandise, furniture and fixtures, after the same had been damaged, and their testimony was therefore competent, under the doctrine of the above case, and tended to prove the appellee's damage as set forth in his complaint. The court therefore did not err in refusing appellants' prayer for a peremptory instruction directing the jury to return a verdict in their favor.

2. The appellants moved to require the appellee to make his complaint more specific by showing each item of property damaged, giving the amount he claimed it was damaged by smoke and water, and the appellants' prayer for instructions, which, if granted, would have told the jury that the appellee was not entitled to recover because he had failed to make this itemized statement of the amount of his loss and damage on each particular article, and because he failed to separate the damaged property from the undamaged, making an inventory of the same, with the cost, quantity and amount claimed on said property.

Insurance contracts, like any other contracts, must receive a reasonable construction so as to effectuate the intention of the parties to the contract. It would be wholly foreign to the purpose of the contracting parties to construe the language of the contract, such as that under review, to mean that, as a condition precedent to recovery, the assured must go through his entire stock, separating and segregating the loss on each item. Such is not in the contemplation of the parties where there is a general damage to the property insured, although, forsooth, some specific articles may escape damage entirely or may be only partially damaged, or all the articles not be damaged to the same extent. Such a requirement by the insurer of the assured would be wholly impracticable, especially where the policy covered a large stock of general merchandise and where the damage in its nature was general, covering in some degree the whole of the property insured. Such was the case here.

We have not set forth the testimony in detail, but it tended to prove that the entire store was blanketed in smoke and moisture as the effect of the fire, which continued for some time—two hours or more—and which proximately resulted in damage to the entire stock. Where such is the case the measure of damages may be ascertained as it was here.

In 33 C. J. 146, § 885, it is said:

"The amount which plaintiff is entitled to recover generally depends upon the terms of the policy and the extent of the loss or injury, in connection with the pleading, and other controlling circumstances of the particular case, less amounts to which the company is entitled as credits or offsets on the amount due under the policy. Plaintiff may be entitled to recover the full amount stated in the insurance contract, as in case of death under a life insurance policy, or in case of a total loss under a valued fire insurance policy. But, where the loss or injury is only partial, plaintiff ordinarily can recover only the actual amount of the loss or injury he has sustained, unless a specified amount is recoverable under the terms of the particular policy."

The doctrine applicable here is expressed in R. C. L. as follows:

"Where all property was injured by fire, water, or smoke, the insured need take no steps to segregate his property, under a policy which provides that damaged and undamaged property shall be separated and cared for in such manner as to protect the undamaged portion from further deterioration." 14 R. C. L., page 1313, § 485.

3. It is not contended by appellants that appellee had not complied with the iron-safe clause; and the testimony tends to sustain appellee's contention that he had complied with the notice and proof of loss clause.

The issues were submitted under correct declarations of law and there was evidence to sustain the verdict. No error appearing, the judgment is affirmed.