194 F.Supp. 828 (1961)
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
v.
HOUSTON FIRE & CASUALTY INSURANCE COMPANY.
Civ. A. Nos. 6131, 7449.
United States District Court W. D. Louisiana, Shreveport Division.
June 12, 1961.
*829 Charles L. Mayer, and Alex F. Smith, Jr., Mayer & Smith, Shreveport, La., Wright, Harrison, Lindsey & Upton, Little Rock, Ark., for plaintiff.
Wilton H. Williams, Jr., Blanchard, Goldstein, Walker & O'Quin, Shreveport, La., for defendant.
BEN C. DAWKINS, Jr., Chief Judge.
These actions[1] arise from an accident in which Robert Germany was fatally injured when an oil well derrick collapsed.
Crow Drilling Company, Inc. (Crow), a Delaware corporation authorized to do and doing business in Arkansas and Louisiana, owned a part interest in and was operator of the well, located near Magnolia, Arkansas. Having determined that the well should be equipped with a pump in order to increase its production, Crow engaged J. B. Downs, Inc. (Downs), a well-servicing company, to perform the necessary operations of removing a "packer" from the bottom of the well and the tubing running down the well to it.
Grady Robison, production foreman for Crow, was in charge of the well. When he arrived at the well on the morning of the accident, the Downs crew, consisting of four men equipped with a specially built truck, was already there ready to begin the pulling operations.
Germany, an employee of Downs, was the operator of the truck and motor-driven winch located on the truck bed. The truck had been backed up to the derrick and a cable was extended from the winch to the top of the derrick, down the center of the derrick to a traveling block, back up to the top and down the opposite side where it was tied to an eye bolt set in a concrete block at the base of the derrick. The traveling block was attached to the tubing, and as the winch tightened the cable, the tubing would be raised from the well.
Upon his arrival, Robison instructed Germany to untie the cable from the eye bolt and secure it to a leg of the derrick. Completing this task, Germany began operating the winch, standing on the rear of the Downs truck. It soon became apparent that the packer was stuck to the casing in such a manner as to require tremendous pressure to be exerted in order to free it. The cable was tightened until 55,000 pounds of pressure registered on a weight indicator attached to the derrick; the brake was set, allowing the pressure to remain for ten or fifteen minutes; the brake was then released which caused the tubing to fall against the packer in an attempt to jar it loose. This method of procedure was continued for approximately an hour when Robison told Germany to increase the pressure to 60,000 pounds. Robison was standing directly behind Germany, leaning against the derrick to feel any movement or "give" of the tubing or derrick. When the pressure reached 59,000 pounds, the derrick collapsed, causing severe injuries to Germany from which he died later that day.
On the date of Germany's death, there was in full force and effect a comprehensive general liability policy issued by Employers Mutual Liability Insurance Company of Wisconsin (Employers Mutual) in favor of Crow, obligating the insurer to pay on behalf of Crow all sums which the insured would be obligated to pay as damages because of bodily injury, sickness, disease or death sustained by any person and caused by accident.
*830 Germany's widow brought suit in this Court against Robison, Crow and Employers Mutual, as Crow's insurer, seeking damages for the death of her husband. Inasmuch as the cause of action arose outside of Louisiana, the Court, upon filing of a timely motion, dismissed Employers Mutual, ruling that the Louisiana Direct Action Statute[2] was unavailable to Mrs. Germany.
On the date of Germany's death, there was also in full force and effect an automobile liability insurance policy issued by Houston Fire & Casualty Insurance Company (Houston) to Downs, obligating Houston to pay on behalf of Downs all sums which Downs would become legally obligated to pay as damages because of bodily injury, sickness, disease or death, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.
After filing a motion for summary judgment in the Germany suit, counsel for Robison and Crow, together with the district claims manager of Employers Mutual, conferred with a representative of Houston. At this conference, Houston was informed that Crow and Robison considered themselves as additional insureds under the omnibus clause of the Houston policy; that Mrs. Germany had offered to compromise her action for $29,600, conditioned upon its acceptance prior to the Court's disposition of the summary judgment motion; that the offer was advantageous to Crow and Robison; and that Houston should conclude such a settlement to protect Robison and Crow from any further liability. No action was taken by Houston following this conference.
A consent judgment was subsequently rendered in favor of Mrs. Germany in the amount of $29,600, and, although the judgment recites that the money was paid by Crow, it was actually paid by Employers Mutual pursuant to their obligations under their comprehensive general liability insurance policy issued to Crow.
At the time of Germany's death, there was also in full force and effect a policy of workmen's compensation insurance issued by Houston to Downs. Subsequent to his death, Houston paid workmen's compensation benefits to Germany's widow and was reimbursed by Mrs. Germany out of the sum received in settlement of her suit against Robison and Crow.
Following settlement of the Germany action, Employers Mutual brought suit against Robison, alleging that his negligence caused the death of Germany and praying for judgment in the amount of $29,600, plus $4,932.67 in attorney's fees. Robison mailed the petition and citation to Houston, calling on it to assume his defense. Houston, through its attorneys, returned the papers and informed Robison that Houston owed him no defense. Robison took no further action and a default judgment against him was subsequently granted by this Court for the amount prayed.
At the same time Employers Mutual sued Robison it also filed a separate action against Houston, alleging that Employers Mutual was Crow's subrogee, that the vehicle belonging to Downs was under the control of and being used by Crow, and that therefore Crow was an omnibus insured under the Houston policy issued to Downs. In this action Employers Mutual seeks indemnification in the amount of $34,532.67. Following the default judgment obtained against Robison, Employers Mutual filed another suit against Houston, alleging that Robison was also an omnibus insured under Houston's policy and that therefore Houston is obligated to pay on behalf of Robison the amount of the judgment rendered against him. These two suits against Houston were consolidated for the purpose of trial and are now ready for decision.
The pertinent provisions of the Houston liability policy are as follows:
"I Coverage ABodily Injury Liability
"To pay on behalf of the insured all sums which the insured shall become *831 legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.
* * * * * *
"III Definition of Insured
"The unqualified word `insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply:
* * * * * *
"(c) to any employee with respect to injury to or sickness [,] disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer;
* * * * * *
"Exclusions
"This policy does not apply:
"(a) to liability assumed by the insured under any contract or agreement;
"(b) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law; or to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law; * * *".
Employers Mutual contends that under "Definition of Insured" Crow and Robison became additional insureds by virtue of the fact that Robison was "using" the Downs truck and Crow was an "organization legally responsible for the use thereof."
In its answers to both suits, Houston asserts that the truck was being used and controlled exclusively by Germany in the performance of the work which constituted a regular part of Downs' business. In the alternative, Houston raises the defense that if the truck was under the control of Crow, Germany became the borrowed employee of Crow, and in such event coverage under Houston's policy in favor of Crow is excluded by virtue of Exclusion (b), supra. Coverage for Robison, it is argued, is excluded by virtue of Paragraph III (c) and Exclusion (b), Germany and Robison being co-employees of the same employer, Crow.
In the brief submitted by counsel for Houston following trial on the merits, it is apparently admitted that Robison was in complete charge and control of the Downs' truck. In fact, such a factual conclusion is urged by Houston as a condition precedent to its defense that Germany was an employee of Crow. Counsel for Employers Mutual is content to admit such a fact because it apparently lays at rest the question of whether Crow and Robison became additional insureds. This brings us to the problem of whether Crow and/or Robison is entitled to protection under Houston's policy in light of Exclusion (b), commonly referred to as the Employee Exclusion.
Employers Mutual argues that the Employee Exclusion has been interpreted by the Louisiana Supreme Court in Pullen v. Employers' Liability Assurance Corporation, Ltd., 230 La. 867, 89 So.2d 373, to the effect that this clause is applicable to exclude coverage only if there exists an employer-employee relationship between the insured claiming coverage and *832 the injured person. It urges that since such a relationship did not exist between Crow and Germany or Robison and Germany the exclusion is inapplicable and Crow retains its coverage under the policy.
At the outset, we note that the conflicts of law rule of the forum is applied in diversity cases,[3] and in Louisiana the conflicts rule is that the law of the state where the insurance policy is delivered governs.[4] The record reflects that the Houston policy was delivered to Downs in Arkansas, and therefore we are compelled to follow the Arkansas law.
A search of the Arkansas juris-prudence by counsel and this Court fails to reveal any Arkansas decision which interprets the Employee Exclusion. We are therefore compelled to anticipate what the Arkansas Courts would do if presented with this problem.[5]
In the recent case of American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 5 Cir., 1957, 248 F.2d 509, 513, the Fifth Circuit Court of Appeals ruled that Alabama, which had not yet considered the problem, would hold that the Employee Exclusion is applicable to withdraw coverage whenever the injured person is an employee of an insured, although not an employee of the insured seeking coverage under the policy. This ruling was recognized as being contrary to the Louisiana law in the Pullen case, supra.
In the American Fidelity case, Estes, a truck driver employed by Osborne, a contract carrier, was injured by the negligent unloading of the Osborne truck by the employees of Larsen & Larsen, Inc., a consignee at its jobsite. St. Paul-Mercury Indemnity Co. was the comprehensive general liability insurer of Larsen, and American Fidelity was the automobile liability insurer of Osborne. St. Paul's policy clearly extended coverage to Estes under these facts, but St. Paul brought a declaratory judgment action seeking a declaration to the effect that it was not obligated to defend its insured, Larsen, in an action brought by Estes inasmuch as the Larsen employees became additional insureds under the American Fidelity policy in their unloading of the insured truck. American Fidelity contended, as does Houston here, that the Employee Exclusion rendered its policy inapplicable because Estes was an "employee of the insured," Osborne.
Having determined that Alabama law required that insurance policies are to be interpreted to effectuate the intention of the parties, the Court ruled that to extend coverage of the American Fidelity policy to Larsen in this situation would defeat the intentions of Osborne and its insurer. The Court reasoned that:
"At the inception, a business assured, like Osborne, has two primary fields of exposure: (1) to employees; and (2) to third parties, members of the public and persons not in the status of employees. The two present different hazards of frequency and severity and traditionally are underwritten separately. The first group is cared for by Employers Liability insurance which, includes as well, if applicable, state or federal workmen's compensation coverage. This insurance is carefully limited to persons in the status of employees and excludes all others. The second group is cared for by Public Liability coverage, either for general operations as Larsen's CGL policy, or specifically in connection with automobiles as in American's automobile policy. These invariably exclude employees of the *833 assured and, to eliminate any doubts, exclude liabilities imposed under workmen's compensation acts. The obvious result is that the prudent business man obtains two types of insurance and, of course, pays two premiums.
"Since, for business men, if not for the general public, business and law have long abandoned the naive idea that the payment of losses are `free' to the assured, the purpose of an assured to integrate his program and reduce cost is thwarted if the policies, so carefully dovetailed, are construed to duplicate coverage. In this sense it is not a matter of the legal concept of liability (master-servant compared to third party), or the coincidence that an employee may be able to contrive a third party relationship on which to base a damage suit. The thing of importance is that for an injury received in the course of the named assured's employment, his employee is enabled to recover ultimately from the employer's Public Liability insurer (and hence him), the very kind of losses or damages which the assured has paid another to underwrite."
The Court, after finding that the contracting parties had no intention to do so, held that American Fidelity's policy did not extend coverage to Larsen.
It must be noted that the Court specifically found that St. Paul had not been subrogated to Larsen's position as an additional insured under the American Fidelity policy; that St. Paul was merely urging a defense against its own assured; and that therefore St. Paul was not entitled to the rule of construction that insurance policies are to be construed most favorably to the assured. In this light, the Court stated that:
"What we are saying is simply this: this is not a suit between an insurer and the assured, or one who under state statutes or procedures is deemed a third party beneficiary of the contract. Principles of construction may well be far different as to those cases, and as to those this opinion expresses none. This is simply and solely a case in which, in determining the application of one contract between the parties (St. Paul v. Larsen), it is necessary to construe another contract between entirely different parties (American  Osborne)."
Like Alabama, Arkansas dictates that insurance policies should be construed to reflect the intention of the parties.[6]
Therefore, we feel compelled to follow the American Fidelity case in its determination of what the contracting parties intended and their purposes in stating that the policy does not apply to any injury or death to any "employee of the insured," notwithstanding the reservation noted above. The rule that an insurance contract is to be given that construction most favorable to the insured has no application unless the contract is first found to be ambiguous. The contract is not ambiguous if the intention of the parties has been or can be determined as is the case here. As it was so aptly stated in Gulf Refining Co. v. Home Indemnity Co. of New York, 8 Cir., 1935, 78 F.2d 842, 843 in ruling on another Arkansas contract of insurance:
"These contentions may be disposed of together. The sole purpose of all contract construction is to ascertain the intention of the parties to the contract. The rule that insurance contracts are to be construed against the insurer is purely *834 a rule of construction which comes into play as an aid to construction only when, after using all other effort to ascertain the intention of the parties, the contract is yet ambiguous as to which of two things was intended  one favorable to the insurer and the other to the insured. It is not at all a rule to be used in seeking a meaning favorable to the insured. It is the last straw moving the scale which has been left uncertain by an ambiguity."
The last prerequisite of the Employee Exclusion is that the employee have received his injury "while engaged in the employment, other than domestic, of the insured * * *." Needless to say, Germany was employed, at the time of the injury, by either Downs or Crow. The question has been extensively argued by counsel for Houston, Employers Mutual simply stating that Germany was not an employee of Crow. Both have urged their conclusions in light of the co-employee exclusion in Paragraph III (c). For our purposes we accept, without deciding, the correctness of Employers Mutual's contention that Germany was an employee of Downs, and since he received his injuries while doing the work he was regularly hired to do, the requirements for the Employee Exclusion have been met. In passing, we note that if Germany should be considered as an employee of Crow at the time he was injured, Employers Mutual would still be denied coverage by the express provisions of Paragraph III (c).
Several other defenses have been raised by Houston which need not be considered inasmuch as liability for the injury and death of Germany is excluded under the Houston policy in the Employee Exclusion.
For the reasons given, judgment is rendered in favor of defendant in both cases.
NOTES
[1] Brought under the Diversity Statute, 28 U.S.C.A. § 1332, plaintiff being a corporate citizen of Wisconsin, defendant a corporate citizen of Texas and the amount in controversy being in excess of $10,000 exclusive of interest and costs.
[2] LSA-R.S. 22:655.
[3] Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481.
[4] LSA-C.C. Art. 10; Prudential Insurance Co. v. Williams, D.C., 139 F.Supp. 202, affirmed Williams v. McFerrin, 5 Cir., 242 F.2d 53.
[5] Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.
[6] Penn-National Hardware Mutual v. Griffin, 1927, 174 Ark. 627, 296 S.W. 66, 53 A.L.R. 1106; Gibson v. Continental Casualty Co., 1929, 178 Ark. 1090, 13 S.W. 2d 621; Aetna Life Insurance Co. v. Spencer, 1930, 182 Ark. 496, 32 S.W.2d 310; Aetna Life Insurance Co. v. Davis, 1933, 187 Ark. 398, 60 S.W.2d 912.