CHARLES P. OULETTA v. STATE OF ARKANSAS

5-5406                                     442 S.W. 2d 216

Opinion Delivered June 2, 1969
[Rehearing denied July 14, 1969.]

*Q. Byrum Hurst* and *Harmon & Wallace* for appellant.

*Joe Purcell*, Atty. Gen. and *Don Langston*, Ass't. Atty. Gen. for appellee.

GEORGE ROSE SMITH, Justice. The appellant was charged with 138 counts of forgery and uttering, all arising from his business transactions with the Benton State Bank. In 1966 and 1967 Ouletta was a contractor, building houses that were financed by the bank. The informations were filed in 1968, after it was discovered that Ouletta had transferred to the bank, for value, a great many construction notes and mortgages that were signed with fictitious names of persons who were supposedly employing Ouletta to build houses. The circuit court, trying the case without a jury, found the defendant guilty and imposed two ten-year sentences, to run concurrently, with a minimum of one third to be actually served.

We first consider Ouletta's contention that he should have been acquitted, for insufficiency of the State's evi-

dence. It is insisted that the bank's officers knew the signatures to be fictitious and that therefore Ouletta was not shown to have had the necessary intent to defraud.

That issue involved a question of fact about which the testimony was in conflict. Ouletta usually dealt with W. A. Springer, formerly a vice-president of the bank. Springer testified that he regularly checked on the progress of Ouletta's houses when Ouletta first began business. After several years, however, Springer came to have confidence in Ouletta and discontinued any attempt to verify the notes and mortgages that he brought to the bank. Springer testified that he had no idea that the instruments were forgeries. W. R. Alsobrook, president of the bank, corroborated Springer's testimony.

Ouletta, testifying in his own defense, maintained in substance that his financial condition had deteriorated to such an extent that the bankers must have known that the instruments were not genuine. When, however, Ouletta was asked point-blank by his own attorney whether he said anything to Mr. Springer about the use of fictitious names on the notes, his reply was evasive: "Well, I might have. I probably did say that they probably were fictitious, to which he probably got the idea." Thus the issue was essentially one of credibility, upon which the trial court's finding is conclusive.

Secondly, it is argued that the court erred in allowing Fred Caudle, a Federal Deposit Insurance Corporation bank examiner, to testify that Ouletta made a statement in writing that he had signed the fictitious names without anyone else knowing about it. It is insisted that Caudle's testimony and the signed statement should have been excluded, because Ouletta was not given a *Miranda* warning by Caudle.

That argument is not sound. Counsel rely upon two cases: *United States* v. *Wainwright,* 284 F. Supp. 129 (D.C. Colo. 1968), and *United States* v. *Turzynski,* 268 F. Supp. 847 (D.C. Ill. 1967). In those cases it was

held that a taxpayer should be warned of his rights before being interrogated about his income tax returns by the Intelligence Division of the Internal Revenue Service. In both cases, however, it was pointed out that a tax matter is not referred to the Intelligence Division until there is reason to believe that the taxpayer has committed a crime. The jurisdiction of the Intelligence Division is limited to criminal matters. Thus those cases merely followed *Escobedo* v. *Illinois,* 378 U.S. 478 (1964), in holding that the warning must be given when an investigation reaches the accusatory stage.

That was not the case here. Caudle testified that he was not a member of any law enforcement agency. In making his examination of the bank he noticed the similarity of handwriting on the notes and asked Ouletta to come in, because his name and address were on the documents. According to Caudle, Ouletta came to the bank voluntarily and signed the statement in the course of a conversation about the documents. It cannot be said that Ouletta was in custody or was deprived of his freedom of action in any way. See *Miranda* v. *Arizona,* 384 U.S. 436 86 S. Ct. 1602, 16 L. Ed. 2d. 694 (1966), and *Orozco* v. *Texas,* 394 U.S. 324, 89 S. Ct. 1095, 22 L. Ed. 2d 311 (1969). The trial court correctly admitted in evidence Caudle's testimony and the statement signed by Ouletta.

Finally, it is argued that after the trial judge had made a finding of guilty and had announced the sentence, the court erred in stating that he would suspend the sentence if the bank president, Alsobrook, recommended it—which Alsobrook refused to do. We find no error, not only because the matter of suspending the sentence lay within the discretion of the trial court, but also because there was no objection nor exception to the court's request for Alsobrook's recommendation. *McDonald* v. *State.* 160 Ark. 185, 254 S.W. 549 (1923).

Affirmed.

Jones, J., not participating.