**BENTON STATE BANK, Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant.**

**No. L R–70–C–71.**

United States District Court,
E. D. Arkansas, W. D.
Jan. 18, 1971.

Edward L. Wright, of Wright, Lindsey & Jennings, Little Rock, Ark., for plaintiff.

E. DeMatt Henderson, of Catlett & Henderson, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is a suit brought on a bankers' blanket bond issued by the defendant, Hartford Accident & Indemnity Co., to plaintiff, Benton State Bank of Benton, Saline County, Arkansas. Federal diversity jurisdiction is not questioned and is established.

Plaintiff alleges in substance that on numerous occasions and over a substantial period of time prior to November 17, 1967, it sustained losses of more than $600,000 on account of alleged fraudulent and criminal conduct on the part of one Charles P. Ouletta, a longtime and, indeed, very favored customer of the Bank, and that the defendant is liable to the plaintiff on the bond in suit up to the $600,000 limit of the bond plus the statutory penalty and attorney's fee provided for by Ark.Stats. Ann., § 66–3238.

The defendant denies liability *in toto*. Alternatively, it contends that in any event its liability under the bond is based on one particular insurance coverage, and that in terms of dollars and cents its liability is limited to a sum of not more than $25,000.

The cause is now before the Court on motions filed by the respective parties for a determination of the defendant's maximum exposure assuming that any liability exists. The defendant also asks for a determination to the effect that some of the alleged losses were not covered by the bond, for a determination that its liability is limited to losses falling within Insuring Clause "E" of the bond, as limited by an attached rider identified as Form F–2849. In that connection defendant asks the Court to hold that the rider relied on, at least in part, by plaintiff, identified as Form F–2890, is not applicable to the losses in question. The plaintiff says that as far as ultimate limit of liability is concerned, it makes no difference whether the rights of the parties are governed by Form F–2849 or by Form F–2890 because the limitations appearing in both forms are cast in identical terms and both limitations are expressly made subject to Section 6 of the basic bond, which section is entitled "Non-Reduction of Liability."

The contentions of the parties have been briefed thoroughly. The questions presented are purely legal and involve a construction of the contract documents in the light of the facts alleged in the complaint which for motion purposes the Court will accept as true. From the standpoint of possible settlement, if nothing else, it is obviously desirable that the questions before the Court be settled at this stage since the case is one thing if we are talking about $25,000 and is something quite different if we are talking about $600,000.

During the period with which the Court is concerned Charles P. Ouletta of North Little Rock, Arkansas, was engaged in the business of developing residential subdivisions and building houses in Saline County. He did an extensive business with the Bank and became heavily indebted to it.

On or about November 17, 1967, examiners of the Federal Deposit Insurance Corporation found evidence that Ouletta had engaged in large scale frauds falling into three categories: (1) He had caused the Bank to make certain loans which loans were evidenced by notes and mortgages to which fictitious signatures had been affixed by Ouletta; (2) He had caused the Bank to make other loans ostensibly to actual living persons whose names Ouletta had forged to notes and mortgages; and (3) He had borrowed money himself on the strength of chattel security (including diamonds) the value of which he had overstated substantially.

In 1968 the Prosecuting Attorney of Saline County filed 128 informations

against Ouletta charging him with forgery and uttering with the Bank being the victim. Ouletta was tried to the Circuit Court without a jury; he was found guilty on all charges. The Circuit Judge sentenced him to imprisonment in the Arkansas State Penitentiary for ten years on each information with the stipulation that the sentences should run concurrently. Ouletta appealed, and his conviction was affirmed by the Supreme Court of Arkansas. Ouletta v. State, 246 Ark. 1130, 442 S.W.2d 216. He then filed a habeas corpus petition in this Court which was denied, Ouletta v. Sarver, Commissioner of Corrections, State of Arkansas, E.D.Ark., 307 F. Supp. 1099; the Court of Appeals affirmed, Ouletta v. Sarver, 8 Cir., 428 F. 2d 804.

After Ouletta's conduct was brought to light, the Bank proceeded against such collateral as was available to it and salvaged what it could. The complaint alleges that the total net loss due to Ouletta's operations was $688,381.21. The alleged losses are classified as follows:

(a) $590,290.52 represented by loans made on the strength of notes and mortgages signed with the names of fictitious obligors. (Counsel for the defendant says that there were 103 of those transactions.)

(b) $17,750 represented by genuine loans made to Ouletta personally on his allegedly false representations that he would use the proceeds to discharge existing liens held by third persons on which representations the Bank allegedly relied. (It seems that there were four of those loans.)

(c) $21,157.69 represented by a loan arranged by Ouletta and with respect to which he forged the names of Roy E. Glover and Rosemary Glover, existing persons.

(d) A similar transaction involving the forgery of the names of B. H. France and Ruth France; that transaction involved a loss of $7,700.

(e) $51,483 on account of loans made in the names of fictitious obligors with respect to which loans Ouletta pledged stones purporting to be diamonds. Plaintiff says that some of the stones were not in fact diamonds, and that the values of others were fraudulently overstated by Ouletta.

On the merits, which the Court does not now reach, the defendant tenders a number of basic defenses which need not be mentioned here. The defendant does contend specifically that the alleged losses falling into categories (b) and (e), supra, were not within the coverage of the bond.

The rights of the parties are governed by Arkansas law; and, as stated, disposition of the motions requires the Court to construe and apply pertinent contract provisions to the assumed facts heretofore set forth. The bond in suit is, in effect, a contract of indemnity insurance running to the benefit of the Bank. The general Arkansas rules for the construction of insurance contracts are well established and were stated by this Court in State Farm Mutual Automobile Insurance Co. v. Pennington, E.D.Ark., 215 F.Supp. 784, 789, as follows:

"It is a well settled principle of Arkansas law that ambiguous terms in an insurance policy are to be construed most strongly against the insurer. Insurance Co. of North America v. Ferrell, 234 Ark. 581, 353 S.W. 2d 353; Travelers Indemnity Co. v. Hyde, 232 Ark. 1020, 342 S.W.2d 295; American Standard Life Insurance Co. v. Meier, 220 Ark. 109, 246 S.W.2d 128; Central Manufacturers Mutual Ins. Co. v. Friedman [213 Ark. 9, 209 S.W.2d 102], supra. On the other hand, an insurance policy, like any other contract, must be construed reasonably and fairly so as to ascertain and carry out the intentions of the parties; and resort may not be had to a forced or unreasonable construction to avoid what may appear to be a harsh result. McKinnon v. Southern Farm Bureau Casualty Co., 232 Ark. 282, 335 S.W. 2d 709; Mercury Insurance Co. v. McClellan, 216 Ark. 410, 225 S.W.2d 931, 49 A.L.R.2d 806; National Life

& Accident Ins. Co. v. Merritt, 200 Ark. 158, 138 S.W.2d 79; American Fidelity & Casualty Co. v. McKee, 198 Ark. 601, 130 S.W.2d 12; Aetna Life Insurance Co. v. Spencer, 182 Ark. 496, 32 S.W.2d 310; Penn-National Hardware Mutual of Huntington, Pa. v. Griffin, 174 Ark. 627, 296 S.W. 66, 53 A.L.R. 1106. In construing an insurance policy a common sense approach should be used, and generally the words employed in the policy are to be understood in their ordinary sense. American Fidelity & Casualty Co. v. McKee, supra; State Farm Mutual Automobile Ins. Co. v. Belshe, 195 Ark. 460, 112 S.W.2d 954.

"As stated, the foregoing Arkansas rules of construction are well settled and are conventional, as has been expressly recognized by the Court of Appeals for this Circuit in Jefferson Insurance Co. of Pine Bluff, Arkansas v. Hirchert, 8 Cir., 281 F.2d 396, 400."

A similar statement of governing principles of Arkansas law is to be found in the opinion of Senior Judge Miller in a case involving a blanket bond issued in favor of the notorious and now defunct Arkansas Loan & Thrift Corporation. Securities & Exchange Commission v. Arkansas L. & T. Corp., W.D. Ark., 297 F.Supp. 73, 80.

The contract documents consist of the Bank's application for the bond, the bond proper, and certain riders, including the two previously mentioned. The application was dated October 23, 1964, and called for the issuance in favor of the Bank of a primary blanket bond in the face amount of $500,000 (later raised to $600,000), to go into effect on October 29, 1964. The application was accepted, and the bond, including the two riders here involved, was duly issued and was in full force and effect during the entire suit period.

The application reflects that as of October 23, 1964, the Bank had 34 salaried officers and employees, deposits of some $12,500,000 and loans and discounts amounting to nearly $6,000,000. The application indicated that the Bank desired protection against forgery under Insuring Clauses D and E of the contemplated bond and also desired "fraudulent real estate mortgage coverage" under what became rider Form F–2890. With respect to each of those coverages inquiry was made as to how much protection was desired. The Bank stated that it wanted $10,000 coverage under Clause D, $25,000 coverage under Clause E, and $25,000 coverage with respect to "fraudulent real estate mortgages." Asked to state the character and amount of losses sustained during the past six years, the Bank represented that its only losses had consisted of 19 check forgeries involving $1,802, $1,400 of which was recovered from the forgers and the insurance carrier, and one "misplacement" involving a loss of $91.

The bond proper sets out seven types of coverage, five of which manifestly have no application to this case. Clause D and Clause E both relate to losses due to forgery; however, the forgeries with which the Court is concerned fall within the scope of Clause E and not Clause D.[1]

Clause E is entitled "Securities," and it provided protection with respect to losses sustained by the Bank on account of reliance on forged documents, which would include notes, mortgages, or deeds of trust.

Rider Form F–2890 provided a coverage not included in the bond form proper. It called for indemnity with respect to losses occasioned by reliance by the Bank on security instruments obtained from the obligors by fraud, trickery, or false pretenses.

■ Taking up, first, the question of coverage, the Court agrees with the defendant that it is not liable under the bond for losses sustained by the Bank on account of Ouletta's failure to make

---

1. The defendant concedes that the signing of a fictitious name to a note or security instrument is as much a forgery as the unauthorized signing of the name of an actual person to such a document.

proper application of the proceeds of certain loans made to him personally. The Court also agrees with the defendant that it is not liable on account of Ouletta's pledging to the Bank fake diamonds or over-valued diamonds.

■ The Court further agrees with the defendant that Form F–2890 does not apply to the conduct of Ouletta in procuring loans by means of fictitious documents or by means of outright forgeries of the names of actual persons to security instruments. Form F–2890 clearly presupposes a situation in which an actual person is induced to execute a security instrument which the inducer then fraudulently transfers or delivers to the Bank to its ultimate financial damage.

■ This brings the Court down to the question of the monetary limit on defendant's liability under Clause E as modified by Form F–2890, which in pertinent part is as follows:

> "In consideration of the premium charged for the attached bond as limited by this rider, it is agreed that:
>
> \*  \*  \*  \*  \*  \*
>
> "2. The total liability of the Underwriter under Insuring Clause (E) of the attached bond, with respect to any loss or losses sustained at any time but discovered after the date and hour this rider becomes effective, is limited to the sum of Twenty Five Thousand and No/100 Dollars ($25,-000).
>
> "3. The liability of the Underwriter as limited in each of the paragraphs numbered 1 and 2 of this rider shall be a part of and not in addition to the amount of the attached bond; subject, nevertheless, to the Non-Reduction of Liability Section of the attached bond."

The Non-Reduction of Liability Section of the bond (Section 6), to which Form F–2849 was expressly made subject, is as follows:

> "Section 6. Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained; PROVIDED, however, that the total liability of the Underwriter under this bond on account of (a) any loss or losses caused by any one act of burglary, robbery or hold-up, or attempt thereat, in which no Employee is concerned or implicated, or (b) any loss or losses with respect to any one unintentional or negligent act or omission on the part of any person (whether one of the Employees or not) resulting in damage to or destruction or misplacement of Property, or (c) any loss or losses other than those specified in (a) and (b) preceding, caused by acts or omissions of any person (whether one of the Employees or not) or acts or omissions in which such person is concerned or implicated, or (d) any loss or losses with respect to any one casualty or event, is limited to the sum above stated in the opening paragraph of this bond irrespective of the total amount of such loss or losses."

The position of the defendant is that when Form F–2849 and Section 6 of the bond are read together and properly construed the limits of defendant's liability under Clause E are $25,000 for loss occasioned by any one forgery (Section 6[d] of the bond) and $25,000 for plural losses resulting from a number of separate forgeries perpetrated by the same person (Section 6[c] of the bond).

Plaintiff contends, on the other hand, that with respect to plural losses occasioned by a series of forgeries committed by one person defendant's limit of liability for each loss is limited to $25,000 but that it is also liable for the aggregate of losses up to the face amount of the bond proper or $600,000.

In S.E.C. v. Ark. L. & T. Corp., supra, 297 F.Supp. at 80, Judge Miller stated that the Non-Reduction of Liability section is a standard provision in blanket bonds and has been in use by insurance companies for a number of years but has not often been the subject of litigation. It seems not to have been con-

strued by the Supreme Court of Arkansas.

It is clear to the Court, and the parties do not argue to the contrary, that, in view of that part of Section 6 preceding the proviso contained therein, the aggregate liability of the insurance company for losses is not limited to the face amount of the bond. Where losses are separate and distinct and occasioned by different people or by acts or omissions of different kinds, the insurance company is, in general, liable for all of the losses even though they may vastly exceed the face amount of the bond.

It is equally clear, however, that in certain situations spelled out in the proviso the liability of the insurance company is limited to the face amount of the bond which for convenience may be called the "bond limit." Ignoring the refinements of policy language, those situations may be described as follows:

(a) Where a loss is caused by single act of robbery, burglary or hold-up, or attempt thereat, not involving an employee of the beneficiary of the bond.

(b) Any loss or losses resulting from any one unintentional or negligent act or omission of any person which causes damage to, destruction, or misplacement of property.

(c) Any loss or losses, outside the scope of (a) and (b), supra, occasioned by the acts or omissions of a single person acting alone or in concert with others.

(d) Any loss or losses with respect to any one casualty or event.

If this case involved nothing but the bond proper, no difficulty would be encountered in determining the extent of defendant's liability, which would be the aggregate of the losses sustained as a result of Ouletta's forgeries but not in excess of $600,000.

The situation just postulated is essentially the same as that presented in S.E.C. v. Arkansas L. & T. Corp., supra. That case involved a blanket bond issued by Fireman's Fund Insurance Co. to Arkansas Loan & Thrift Corporation (AL&T); the "bond limit" was $150,000; the bond contained a Section 6 in all material respects identical to the Section 6 appearing in the bond involved in this case. One Bartlett, in association with others, through a series of unlawful and fraudulent acts caused AL&T to sustain losses of more than $600,000, and the company was rendered insolvent. A receiver was appointed by the United States District Court for the Western District of Arkansas in a suit brought by the S.E.C. The receiver sought an adjudication that notwithstanding the $150,000 "bond limit," the company was liable to the full extent of Bartlett's defalcations. The insurance company contended on the strength of Section 6 that its liability was limited to $150,000. In a well considered opinion the Court upheld the position of the insurer.

In the instant case, however, we do not have the bond standing alone; we have the bond plus the rider, and the rider limits the defendant's liability for loss or losses covered by Insuring Clause E of the bond to $25,000, but the limitation is made subject to Section 6 of the bond.

The task of the Court, then, is to read the rider and Section 6 together and to harmonize them, if possible. It is evident that the draftsmen of the bond and rider saw no conflict between the latter and Section 6 of the bond, and it is equally evident that the rider was intended to accomplish something substantial by way of limitation on the defendant's liability with respect to losses due to forgery.

It was within the competency of the parties to contract with respect to the amount of protection to be provided to the Bank in various areas of its business activities, and to contract for more protection in certain areas than in others. The Court thinks that that is what the parties did.

The Court concludes, again in agreement with the defendant, that Form F-2849 created a special "bond limit" of $25,000 with respect to forgery losses falling within Clause E. And Section 6

**680**

of the bond would apply to that $25,000 bond limit just as though the face of the bond referred to $25,000 rather than to $500,000 or $600,000.

In other words, the parties had a separate or special contract with respect to forgery losses covered by Clause E which special or separate contract was subject to the provisions of Section 6 of the bond proper, which provisions related to the $25,000 figure appearing in the rider rather than to the figure appearing on the face of the bond or in the rider whereby the face amount of the bond was increased to $600,000.

The result here reached finds full support in Roodhouse National Bank v. Fidelity & Deposit Co. of Maryland, 7 Cir., 426 F.2d 1347, wherein the Court took occasion to distinguish the decision in Humboldt Trust & Savings Bank v. Fidelity & Casualty Co. of N. Y., 255 Iowa 524, 122 N.W.2d 358, cited by plaintiff in support of its position.

Thus defendant will be liable up to $25,000 on amount of such aggregate losses due to Ouletta's forgeries as plaintiff may be able to establish, subject, of course, to basic defenses set up in the answer.

An appropriate order will be entered.